H. SPRINGER ET AL. v. CITIZENS' N. GAS CO.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS OF BEAVER COUNTY.

Argued October 8, 1891—Decided November 9, 1891.

(*a*) An oil- and gas-lease contained a covenant that the lessee should complete a well within a certain time, or thereafter pay to the lessors certain sums semi-annually, until such completion; and stipulated that the failure to complete said well, or to make said payments as covenated, should render the lease null and void and of no effect between the parties:

1. The forfeiture clause being inserted in the interest of the lessors, they had the option, upon a default by the lessee, either to assert a forfeiture, or to affirm the continuance of the contract; and when they adopted the latter alternative, the lessee could not set up a forfeiture, to the action in affirmance of the lease: Ray v. N. Gas Co., 138 Pa. 576.

2. An allegation that " soon " after the lease was executed, it was " discovered that the territory was worthless for either oil or gas," and that the " leased land did not contain either gas or oil in paying quantities at the time " of execution, is insufficient as a defence to a summary judgment in an action in affirmance of the continuance of the lease.

3. An alleged oral understanding between the lessee and one only of the several lessors, as to the legal effect of a forfeiture clause in the contract, cannot affect the liability of an assignee of the lease thereunder, especially when the assignee took the assignment thereof without any knowledge of such understanding.

4. The lessors being an adult, and the guardian of certain minors, a declaration by the guardian in relation to the lease, that the same was ended and void, and the lessors had no claim thereunder, was without effect towards relieving the assignee of the lease from liability for failure to perform the covenants of the lessee.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 93 October Term 1891, Sup. Ct.; court below, No. 254 December Term 1890, C. P.

On November 12, 1890, Hannah Springer, Arsula Springer, and James H. Springer guardian of Effa M. Springer, brought assumpsit against the Citizens' Natural Gas Company, filing a statement of claim to recover certain sums covenanted to be paid to them by the grantee in a lease of land for oil and gas production.

The lease, made a part of the statement of claim, was dated December 17, 1886, was executed by Hannah Springer, and James H. Springer, guardian of Arsula R. and Effa M. Springer, to E. L. Barton; and, in consideration of the covenants on the part of the grantee therein contained, demised to the latter, his heirs, executors and assigns, a tract of land containing one hundred and forty-seven acres, for the sole and only purpose of drilling and operating wells, and storing, transporting and conveying oil or gas, for the term of five years, " and as much longer as gas or oil is produced in paying quantities." The grantee covenanted to pay and deliver to the grantors a graded royalty on the oil produced, and that " if gas is produced in sufficient quantities and utilized," the sum of five hundred dollars per annum for each and every well drilled; and further, to pay one hundred dollars on the execution of the lease, and one hundred dollars on the confirmation of the same by the court. The lease contained, also, the following provisions :

" Operations on the above described premises shall be commenced, and one well completed within six months from the date hereof; and in case of a failure to complete one well within such time, the party of the second part hereby agrees to pay to parties of the first part, for such delay, the sum of three hundred dollars within three days after the time for completing such well as above specified, payable at above-mentioned national bank, and two hundred and fifty dollars semi-annually thereafter in advance until one well shall be completed; and the parties of the first part hereby agree to accept such sum as full consideration and payment for such semi-yearly delay until one well shall be completed; and a failure to complete one well or to make any of such payments in this lease mentioned, within

such time and at such place as above mentioned, renders this lease null and void, and to remain without effect between the parties hereto." . . . .

The statement of claim averred the confirmation of said lease by the Orphans' Court of Beaver county on December 18, 1886; the assignment thereof by said E. L. Barton to the Citizens' Natural Gas Co. on August 1, 1887; that said Arsula Springer had arrived at the age of twenty-one years; that the plaintiffs had performed all the stipulations of the lease on their part to be performed, and proceeded:

"Yet the defendant has not fulfilled the stipulations of the said agreement on its part to be performed in this, to wit, that the defendant wholly neglected to do and perform certain works which were requisite and necessary to be done and performed under and by virtue of the said agreement; that is to say, the said E. L. Barton did not commence operations and complete one well, by boring or drilling the same, on the premises described in said lease, within six months from the date thereof; nor has he or said defendant commenced operations upon or completed a well up to the time of bringing this suit; nor has the said defendant paid to plaintiffs the penalty stipulated in said lease for the neglect, failure and delay of said E. L. Barton and his assignee, the defendant as aforesaid, which has fallen due at divers times, to wit: The sum of $250, due June 17, 1888; the sum of $250, due December 17, 1888; the sum of $250, due June 17, 1889; the sum of $250, due December 17, 1889; the sum of $250, due June 17, 1890, amounting to twelve hundred and fifty dollars; to the plaintiffs' damage of two thousand dollars."

On November 28, 1890, the defendant company filed an affidavit of defence averring as follows:

"1. The writing, lease or agreement, referred to by the plaintiffs, was between said plaintiffs and E. L. Barton; and at the time it was made, Mrs. Hannah Springer, who assumed to act for all the parties and who was on the farm, insisted upon the clause of forfeiture, wanted it distinctly understood, and had the same interlined in the usual printed form of lease which was signed by said Barton; and the oral explanation and agreement between the parties was, that a failure to perform any one of the covenants forfeited the lease immediately.

" 2. The only estate which either said Barton or defendant have had in the Springer farm has been simply an option or privilege to drill wells, for which five hundred dollars has been paid; and the plaintiffs have ever since remained in open, visible and notorious possession thereof, defendant never having made further payment, or drilled a well or wells thereon.

" 3. Affiant further says that he is informed, and believes the information to be true, that some time in the fall or winter of 1888, defendant's agent called upon James Springer, one of said plaintiffs, in relation to said lease, who declared that the same was ended and void, and that they (plaintiffs) had no claim thereunder, and that the Citizens' Natural Gas Co. was owing them nothing whatever on account of rent, etc. Affiant further says that no claim, pretence, or demand has been made that defendant was owing plaintiffs, until recently; and that there is nothing whatever due to said plaintiffs under and by reason of said agreement or lease, especially as explained and understood between the parties thereto at the time the agreement was made, and as well known by said plaintiffs at the time.

" 4. Affiant further says that he is advised that said defendant company is not liable to said plaintiffs for any amount whatever, and the action, if said plaintiffs had or have any, should be against said Barton, the grantee under said writing, lease or conveyance.

" 5. Affiant further says that he is informed, advised and believes that at the time of the writing on which suit is brought the laws of Pennsylvania and the United States were in force, and consequently became a part of the contract and entered into the same; and that, inasmuch as said contract contained a forfeiture clause which was fully understood, urged and insisted upon by plaintiffs, the substance of which being as follows : " And a failure to complete one well or to make any of such payments ('in this lease mentioned,' interlined) within such time and at such place as above mentioned, renders this lease null and void and to remain without effect between the parties hereto," then, upon said declared and admitted forfeiture, said writing, lease or agreement became ipso facto ended and determined, both as to the lessors and lessee, and no action whatever could be sustained thereunder. Affiant is informed

Opinion of Court below.

and believes both plaintiffs and said Barton relied upon this as the law of Pennsylvania at the time of the execution of said writing sued upon; and if it is now held that the option to determine said lease or writing, or that if such option was entirely with the plaintiffs, lessors, said Barton would not have entered into the same, and that to so hold will be to reverse the law, and in contravention of article 1., § 10, of the constitution of the United States, which provides, "No state shall pass any law impairing the obligations of contracts."

"6. Affiant makes probert to this Honorable Court of the original writing, lease or agreement sued upon, now in the hands of said defendant company, but insists that said company is not liable in any manner whatever thereunder, and that it has never assumed any liability to pay any amount or amounts of money to the grantors which might become due by the grantee, said Barton."

A supplemental affidavit of defence averred that the affiant, within the last three or four days and not before, had been informed, believed, and he expected to be able to prove as follows:

"That, although the said E. L. Barton paid one hundred dollars at the time of the delivery of said lease, it was soon thereafter discovered that the territory was worthless for either oil or gas and the drilling of a well or wells was abandoned by said Barton and said defendant company, and that said leased land did not contain either gas or oil in paying quantities at the time of the execution of the lease upon which suit is now instituted."

A rule for judgment for want of a sufficient affidavit of defence having been argued, the court, WICKHAM, P. J., on February 9, 1891, filed the following opinion:

The defences set up in this case are numerous and some of them rather vague.

1. It is alleged that Hannah Springer, "who assumed to act for all the parties," insisted on having the forfeiture clause inserted in the lease, and that "the oral explanation and agreement between the parties was, that a failure to perform any one of the covenants forfeited the lease immediately." It will at once be observed that it is not asserted that Hannah Springer

Opinion of Court below.

was, in fact, the agent of the other lessors, or had any authority to act for them. Furthermore, she could not act for any one save herself, as her co-lessors were minors, and their contract, in effect, was made for them by the Orphans' Court. It is not pretended that the court knew of any agreement except the one in writing. Again; the alleged oral agreement is, in reality, nothing more or less than the written forfeiture clause put in different words, and must therefore receive a like construction. It may be added that, so far as the affidavits of defence show, the defendant company, when it took an assignment of the written lease, knew nothing of the oral agreement, and therefore could not have been misled by it.

2. The second defence is met by the decision in Ray v. Nat. Gas Co., 138 Pa. 576.

3. To begin with, the third defence is too vaguely stated. The "defendant's agent" calling on James Springer "in relation to said lease," is rather an indefinite sort of proceeding. Who was the defendant's agent? What was he authorized to do or say in relation to the lease? Was James Springer visited in his capacity as guardian? Was he still guardian of Arsula Springer, or had she arrived at full age? These things are all left to surmise. Moreover, what he is alleged to have said may be more easily understood as a mere expression of opinion as to the legal status of the parties under the forfeiture clause, than as a declaration of forfeiture. It must be borne in mind, too, that even if James Springer could, as to his ward or wards, without leave of the Orphans' Court, annul the contract, he could hardly do so without the consent of Hannah Springer. The subject matter of the contract is not divisible. Leaving out of view the effect of an actual exclusion of the defendant from the leased premises by one of the lessors, it may be doubted (but need not be decided) that a mere oral declaration of forfeiture, made by one lessor without the assent or contrary to the wish of the other or others, would suffice to annul the lease.

4. The fourth defence is simply a general denial of liability, and hence need not be further considered.

5. The fifth defence was held insufficient in Ray v. Nat. Gas Company, above cited.

6. The last matter of defence is contained in the allegation that "soon" after the lease was made it was "discovered that

the territory was worthless, for either oil or gas." Here is another indefinite allegation. How soon was the discovery made? "Soon" is a relative term. The period it is intended to indicate is and can be known only to him who uses it. Does it in the present case mean weeks, months or years? Certainly, so long as the existence of gas or oil in the premises was a matter of doubt, the lessors were entitled to have a test well drilled, or to receive the compensation agreed on for the delay. It is impossible to learn from the affidavit of defence when the discovery, therein alleged, was made. Therefore, this branch of the defence may be dismissed as too vague for consideration.

I do not think, however, that the fact of there being no oil or gas in the land, no matter how soon found out, could avail the defendant. The lessors were entitled to insist that this fact should be made manifest in the very manner agreed upon, or to demand the sums stipulated to be paid for delay. The covenant on this subject is absolute and unqualified, and provides for the doing of nothing that is illegal or impossible. If a clear, positive covenant, like the one before us, to do a lawful thing or pay a certain sum of money for not doing it, can be evaded by showing that the performance of the act would not benefit the covenantee, it is hard to tell where we could properly stop in applying the rule. We might presently reach a point where an action for liquidated damages for breach of an agreement not to engage in a certain business within designated limits, might be defeated by proving that every one conducting the same business in the neighborhood had been losing money and, for reasons shown, would probably continue to do so.

The rule adopted by this court in Holmes v. Nat. Gas Co., No. 123 June Term 1890, is not applicable here. In that case, the lessor was to be paid only for oil or gas actually found and used. While there was a covenant that the lessee should drill a second well, it was not stipulated that anything should be paid for failure to do so; hence, the only way in which the plaintiff could possibly prove any damages, was by showing that there was oil or gas in his land which could and would have been obtained and utilized by putting down another well. In the case at bar, however, the damages for delaying to drill are fixed and liquidated by the parties themselves in their

agreement.   Only in this way, or by reserving a rent, can the landowner make himself sure of any compensation whatever, for allowing an oil or gas lease to become and remain an encumbrance on his property.   Such an encumbrance may often prove a source of annoyance and loss, and notwithstanding provisions for forfeiture, is generally more easy to create than to get rid of.   There was nothing morally or legally wrong in the lessors, here, insisting on a covenant which might, although in a manner not contemplated by the lessee, bring them some return for giving the lease.   We must remember that everything in this covenant was intended for their benefit, and that therefore, they have a right to get what they can out of it. We are not justified in assuming that they did not, when the lease was made, look forward to the certain semi-annual gain that would result to them, if the lessee, despairing of finding either oil or gas, would elect to pay each and all of the sums to be paid for delay, rather than expend even a greater sum than their aggregate in drilling a well which would be useless to him.   In brief, the lessors had a possibility of large profit if the well were put down, and a certainty of some profit if it were not.

That the contract may have proved a losing one to the lessee or his assignee, the defendant, is neither here nor there. To quote the popular saying, "a contract is a contract," and no sufficient reason appears why the one under consideration should not be enforced.

And now, to wit, February 9, 1891, judgment is ordered for the plaintiffs, the sum due to be liquidated by the prothonotary.

—Judgment having been entered in favor of the plaintiffs for $1,373.30, the defendant took this appeal, assigning the order entering judgment for want of a sufficient affidavit of defence, for error.

*Mr. A. H. Clarke* (with him *Mr. J. B. Blair*), for the appellant.

That the averment that nothing was due " under and by reason of said agreement or lease, especially as explained and understood between the parties at the time the agreement was made, and as was well known by plaintiffs at the time," was

sufficient, counsel cited: Walker v. France, 112 Pa. 203; Cull-mans v. Lindsay, 114 Pa. 170; Powelton Coal Co. v. McShain, 75 Pa. 238; Shughart v. Moore, 78 Pa. 469; Graver v. Scott, 80 Pa. 88; Erwin's App., 20 W. N. 278. That the lease contained an implied warranty that the land would produce gas or oil in paying quantities, and if it could be established that at the time thereof no gas or oil in paying quantities existed, the grantee could not be held for rent in the nature of a royalty: Muhlenberg v. Henning, 116 Pa. 138; McCahan v. Wharton, 121 Pa. 425.

*Mr. A. S. Moore* (with him *Mr. W. S. Moore*), for the appellees.

Counsel cited: Ray v. Nat. Gas Co., 138 Pa. 576; Wills v. Nat. Gas Co., 130 Pa. 222.

PER CURIAM:

This judgment is affirmed upon the opinion of the learned judge of the court below.