## J. J. Young *v.* Equitable Gas Company, Appellant.

*Covenant to perform or pay, enforceable.*

A clear, positive covenant to do a lawful thing or pay a certain sum of money for not doing it, cannot be avoided by showing that the performance of the act would not benefit the covenantee.

*Oil and gas lease—Covenant to sink wells binding.*

A covenant in a lease that lessee will sink three wells or pay a certain annual sum for default cannot be evaded by showing that expert opinion indicates that the sinking of three wells might reduce the flow of gas and be a positive harm to wells already sunk, thereby reducing lessor's profits. The covenant is an absolute and unqualified covenant for the benefit of the lessor and he has the right to enforce it.

Argued April 19, 1897.    Appeal, No. 105, April T., 1897, by defendant, from judgment of C. P. Westmoreland Co., on verdict for plaintiff. Before RICE, P. J., WILLARD, WICKHAM, BEAVER, REEDER, ORLADY and SMITH, JJ.    Affirmed.

Assumpsit on lease of farm for oil and gas purposes.    Before DOTY, P. J.

The facts sufficiently appear in the opinion of the court.

Verdict and judgment for plaintiff for $834.49.    Defendant appealed.

*Errors assigned* were (1) In ruling against the question of law reserved and entering judgment for the plaintiff, which question of law and answer thereto are as follows : " The undisputed evidence being that according to the opinion of expert witnesses, the drilling of a third well, the failure to do which is the subject-matter of this suit, would have been certainly attended with the failure of the first and second wells and a consequent loss to both plaintiff and defendant, we instruct you, as a matter of law, that no stipulation in the contract required the drilling of said third well, where the same would be attended with this result and your verdict should be in favor of the defendant. *Answer :* This proposition we reserve, instructing you to render a verdict in favor of the plaintiff for that amount, subject to the question of law reserved." (2–4) Refusal of binding instructions for defendant.

*Paul H. Gaither*, of *Gaither & Woods*, for appellant.—It would be against natural justice that one should pay for a bargain which he cannot have. There ought to be a quid pro quo, not a bubble or moonshine : Steinhaur v. Witman, 1 S. & R. 445.

We submit that the case of Muhlenberg v. Henning, 116 Pa. 138, rules this identical question in defendant's favor.

The proper method of exploring for gas is suggested by the Supreme Court in the case of McKnight v. Gas Co., 146 Pa. 185

*Atkinson & Peoples*, for appellee.—The plaintiff invokes the efficacy and protection of this clause of his contract so made for such purpose, and under the ruling of the Supreme Court of this state, is justly and clearly entitled to the same : Bartley v. Phillips, 165 Pa. 325 ; Leatherman v. Oliver, 151 Pa. 646.

OPINION BY SMITH, J., July 23, 1897 :

On the 25th of June, 1891, the plaintiff demised to the defendant a tract of land containing one hundred and eighteen acres " for the purpose and with the exclusive right of drilling and operating for petroleum and gas," for the term of ten years " and as much longer as oil or gas is found in paying quantities or the rental paid thereon." The lease contained, inter alia,

the following covenants : "Should gas be found in sufficient quantities to justify marketing the same, the consideration in full to the party of the first part shall be two hundred dollars per annum for the gas from each well so long as it shall be sold therefrom. . . . It is further agreed that the party of the second part shall complete three wells on the described premises, within three months from the date above, or in default thereof pay to the party of the first part for such delay, a yearly rental of two hundred and thirty-six dollars on the said premises from the time for completing such well as above specified, until such wells are completed." Another clause gave the lessee the right to surrender the lease at any time, whereupon it should become null and void, and the lessee be wholly absolved from all liability whatsoever thereunder, or for any matter growing out of the agreement.

In pursuance of this agreement the defendant drilled two wells on the premises and "gas was found in sufficient quantities to justify marketing" it, and for these the stipulated price per well was paid. But the defendant company failed to drill and complete a third well as called for by the agreement, for the alleged reason that to do so would seriously impair the producing capacity of those already sunk, by lowering the pressure and thus diminishing the flow of gas therefrom, or possibly rendering the wells valueless. This action was brought to recover the sum fixed upon for the failure to drill three wells as provided in the agreement, and the trial court directed a verdict for the plaintiff subject to the question reserved and embodied in the first point of the defendant as follows : "The undisputed evidence being that according to the opinion of expert witnesses the drilling of a third well, the failure to do which is the subject-matter of this suit, would have been certainly attended with the failure of the first and second wells, and a consequent loss to both plaintiff and defendant, we instruct you as a matter of law that no stipulation in the contract required the drilling of said third well where the same would be attended with this result, and your verdict should be in favor of the defendant." No objection was raised to the substance of the question or the manner of reserving it.

There is no ambiguity in the covenant sued upon. It clearly provides that the defendant shall complete three wells on the

premises within three months, or in default thereof pay the plaintiff yearly the sum of $236 until such wells are completed. Under the terms of the agreement, whether the wells shall be completed rests exclusively with the defendant. But the rental agreed upon is not left to the discretion of either party, and cannot be varied without the consent of both. The plaintiff can recover no more even could it be shown that by reason of the failure to sink all the wells his loss is far greater than the stipulated compensation for failure to do so; nor can the defendant be relieved from liability for the sum agreed upon in case of default, under the plea that to sink the wells would be injurious to both parties. The agreement specifies the character and extent of the work and operations required, and it is reasonable to assume that it embraces what was considered best for both parties under the circumstances. Should the contract prove undesirable or the operations cease to be profitable, the defendant may surrender the lease at any time and thus be relieved from any loss or sacrifice, while the plaintiff is irrevocably bound by its terms, upon completion of the wells or payment of the rent. The exclusive right to the gas, with practically unlimited time in which to take and transport it to market, present substantial reasons for the plaintiff's insistence on compliance with the agreement. To permit the gas to be taken through two wells at an annual rental of $400 instead of through three wells at $600 might enable the defendant to take the plaintiff's property in a manner that would reduce his compensation one third from what was agreed upon, and also relieve the company from the expense of sinking another well. On the other hand, under the terms of the agreement, if gas should not be found in the three wells "in sufficient quantities to justify marketing," the defendant could not be required to pay anything. It can only be called upon to pay "for the gas from each well so long as it shall be sold therefrom." Thus the expediency of operating is left to the determination of the defendant.

The authorities cited in behalf of the defendant do not support the proposition sought to be established by them. Thus the claim of the plaintiff in Muhlenberg v. Henning, 116 Pa. 138, was based on a lease of iron ore, in which it was agreed that one thousand five hundred tons of ore should be mined

annually from the plaintiff's land, or in default thereof an annual royalty paid of $525, the price fixed for one thousand five hundred tons of ore. The ore found was not of merchantable quality, and the lessee could not fulfill the contract; and on his failure to pay the royalty, suit was brought therefor. The Supreme Court held that under these circumstances the lessee was not bound for the stipulated royalty, as that was undoubtedly based on the assumption of the parties that sufficient ore of the quality specified existed on the demised premises. The default in that case had reference to the mining of the ore, and if there was no ore there could be no default for failure to mine it. The subject-matter of the contract had no existence in fact, and there could be no default in law on a failure to do an impossible thing. The royalty reserved was equivalent to the price of the ore, and not a penalty or " dead rent." The covenant to pay upon failure to drill the wells in the present case is not dependent on the successful operation of the wells or the failure to operate them. The defendant is not bound under the terms of the lease in this case to open three wells. Literally interpreted the company might retain the exclusive right to the gas during the term upon paying the sum of $236 annually. This sum is not in any sense the price of the gas; that is fixed at $200 a well annually, when taken and marketed according to the agreement. The right to the money sued for is based on conditions optional with the defendant, and may be defeated by the completion of another well. This right is established upon failure to complete three wells, not by failure to take and market the gas. The default is on the failure to complete the wells, not the failure to operate them. Nor is the case of McKnight v. N. Gas Co., 146 Pa. 185, in point. The action there was on an alleged implied contract to put down a second gas well after the first had been abandoned. And it was held that as the lessor reserved the right to designate the point at which wells should be located, his failure to make such designation absolved the lessee from liability for losses arising from the absence of a well, even if such implied duty existed.

The action in the present case is based upon an express, absolute and unqualified covenant for the benefit of the plaintiff, and he has a right to enforce it. The manifest purpose of

the lease was to test the land for oil and gas by putting down three wells and thus securing those minerals in such quantities as three wells might produce; and the stipulations cannot be defeated on the assumption that injuries or losses may follow the method prescribed by the agreement.

In Springer v. N. Gas Co., 145 Pa. 430, it was set up in defense to a similar covenant that soon after the execution of the lease it was discovered that the demised territory was worthless for either oil or gas and therefore the drilling of wells was abandoned.   Our Brother WICKHAM before whom the motion for judgment for want of a sufficient affidavit of defense was made, in an opinion said: "I do not think however that the fact of there being no oil or gas in the land no matter how soon found out, could avail the defendant.   The lessors were entitled to insist that this fact should be made manifest in the very manner agreed upon, or to demand the sums stipulated to be paid for the delay.   The covenant on this subject is absolute and unqualified, and provides for the doing of nothing that is illegal or impossible.   If a clear, positive covenant like the one before us to do a lawful thing or pay a certain sum of money for not doing it, can be evaded by showing that the performance of the act would not benefit the covenantee, it is hard to tell where we could properly stop in applying the rule."   This case was affirmed by the Supreme Court on the opinion of Judge WICKHAM.   And the principle just quoted was again applied in Gibson v. Oliver, 158 Pa. 277, where the above and other cases are cited in its support.   In Cochran v. Pew, 159 Pa. 184, which was an action for rent on a covenant similar to the one in the present case, the fact that the demised land was shown by adequate exploration of neighboring territory to be dry, and that the sinking of a well would be a useless expense, was held to be no defense in an action on the lease which stipulated that a test well should be sunk on the land demised; Mr. Justice MITCHELL saying: "The parties have clearly stipulated for the mode in which the trial shall be made, and it is to be by a well on this land.   There is no room for science, any more than there is for a jury, to say that it will be of no use to do it.   The parties have explicitly agreed on the exact thing to be done, and the exact amount to be paid for failure to do it.   The scientific nature of mining in the present day, and the certainty of scientific con-

clusions from exploration of neighboring territory may be fully recognized and admitted, but nevertheless, hopeful parties may desire an actual test, and if we are to take notice as counsel suggest of facts in the history of oil mining, we know that some of the most extraordinary and profitable productions have been the result of 'wild catting' in unpromising fields. But it is enough for us that the parties have contracted for the thing to be done and the damages for not doing it. Under such circumstances it is never open to the covenantor to say that the thing would be of no value to the covenantee if it were not done."

It is needless to cite further authorities. The controlling principle of those referred to rules the present case. The fact that the sinking of a third well might impair the value of those already in operation, and be a useless expenditure of money, does not affect the question at issue. The defendant may not be obliged to sink another well, and this action is not for the purpose of compelling that to be done. But a failure to perform that part of the agreement cannot operate to annul another substantially independent covenant.

The judgment is affirmed.