## Skillen v. Logan, Appellant.

*Lease—Royalties—Covenant.*

Where a lease contains an absolute and unqualified covenant to operate a quarry as it existed at the time the lease was executed, and a provision for a minimum annual royalty if the quarry should not be operated, and also a provision that the lessee should have the right to construct another switch on the leased premises, the defendant cannot in a suit for royalty defend on the ground that a railroad company refused to put in a new switch until a contract which it had with the lessor should be canceled in so far as its application to a new switch was concerned.   In such a case where the evidence shows that the quarry had been operated at a profit immediately prior to the lease, the question whether the plaintiff wilfully refused to fulfill his covenant was purely a question of fact for the jury.

Where parties contract for a thing to be done and the damages for not doing it, it is never open to the covenantor to say that the thing he obligated himself to do would not be as profitable to him as he expected it would be when he made his contract.

Argued May 14, 1902.   Appeal, No. 79, April T., 1902, by defendant, from judgment of C. P. Beaver Co., June T., 1900,

No. 210, on verdict for plaintiff in case of Lory Skillen v. Ira W. Logan. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Affirmed.

Assumpsit for minimum royalty under a quarry lease. Before WILSON, P. J.

At the trial it appeared that on May 9, 1899, defendant leased a quarry in North Sewickley township from the plaintiff.

The court charged in part as follows:

The defendant alleges that under the terms of agreement the plaintiff granted him the privilege of building or having another switch erected into the quarry; and that, by reason of a special contract existing between the Pittsburg Company and Matthew Skillen, the deceased husband of the plaintiff, wherein the switching charges had been fixed at twenty-five cents per car, that the Pittsburg & Lake Erie Railroad Company, operating the Beaver & Ellwood Railway, refused to put in the switch, unless the switching charges of twenty-five cents agreed upon between Matthew Skillen and the Pittsburg Company,—and this agreement descending to the heirs and assigns of the one and the assigns of the other—were released and the usual charges agreed to be paid.

Under the terms of the agreement the plaintiff leased the quarry for a certain rate per car. In that agreement she agreed with the defendant that he was to " have the right to use the switch now located and constructed along said lease, and shall also have the right to construct another switch from the main track of the Beaver & Ellwood Railway through and into said leased premises, beginning the same at the north of the northern limit of the premises hereby leased, and extending the same into the above described land across the southwestern corner of the land lying to the north of the hereinbefore described land, provided the lease of said adjoining premises shall consent thereto." This is one of the provisions of the lease. Another provision is that: " It is agreed that if the charges by the railroad company for switching cars to and from the Beaver & Ellwood Railway shall exceed the sum of twenty-five cents

per car, such excess shall stand as a credit upon the royalty herein reserved and stipulated when paid by second party."

You will observe, gentlemen, that, under the terms of this lease, the plaintiff granted the right of the use of the switch which was located and built in the quarry, and also the privilege or right of erecting another switch over and across the same for the purpose of operating it.] [1]

The defendant asks to be relieved from the payment of the rental under this lease, by reason, as he alleges, of the fact that the plaintiff refuses to release the twenty-five cent per car charges, and that the Pittsburg & Lake Erie Railroad Company would not put in an additional switch which the lease gave the privilege to the defendant to put in unless that was released. The plaintiff does not bind herself in this agreement, in leasing this quarry to the defendant, for more than the use of the switch which is now there, and the right to build a switch across the premises. It was not incumbent upon her, neither could it have been required of her by the defendant to release any agreement which she had relative to the switching charges running with this land; so that, unless it was impossible for the defendant to operate this quarry without another switch, and he had made every effort to procure the erection of a switch on the premises for the purpose of operating the quarry, and could not procure the same, he would not be relieved from the payment of the rental or royalty. Now, you understand that there is nothing in the lease which would bind or require the plaintiff to release the switching charges of twenty-five cents per car that an additional switch might be put in, unless it precluded absolutely the operation of the quarry. She did not undertake, when she made the lease, to procure a switch from the Pittsburg & Lake Erie Railroad Company; she only granted the right to the defendant to erect one upon the land, and the right to use the switch was there. If, however, the Pittsburg & Lake Erie Railroad Company placed this condition upon the erection of a switch there, and it was impossible for the defendant to operate the quarry without this additional switch, then he would be relieved from the payment of this money, as it would be no fault on his part if he made an honest effort to meet the requirement of the Pittsburg & Lake Erie Railroad Company, and they refused to put

the switch in unless the other contract held by Mrs. Skillen was released, thereby rendering it impossible for him to operate the quarry. This is, in brief, the legal position as the court understands it in this case, there being no requirement, under the interpretation of this contract, or lease of this quarry, on the part of the plaintiff to release her twenty-five cent rate.] [2]

[And we might say that this was advantageous to the defendant, because of the twenty-five cent rate, of which the plaintiff in the case gives him the advantage, agreeing, if he is required to pay more than twenty-five cents per car for the moving of the cars to the Pennsylvania Railroad, she would allow that as a rebate on the rental, this excess again to be assigned to her; so that that was rather an advantage to the defendant so far as the operation of the quarry was concerned, unless that stood as a barrier in the hands of the Pittsburg & Lake Erie Railroad Company to the erection of an additional switch, and that additional switch was necessary for the operation of the quarry; if it were not, then the defendant would be liable to the plaintiff for the rental; if it were, then your verdict should be for the defendant.] [3]

[It matters not in this case what rights of action the plaintiff may have against any other person. If the plaintiff has a right of action she has a right to choose whom she will bring in here; and it is not for the court to determine here whether the plaintiff should have a right of action still against the Pittsburg & Lake Erie Railroad Company, or whether her right of action is against the defendant. That is, she has a right of action here in this case, and if the evidence warrants it under the instructions of the court is entitled to a verdict.] [4]

[Another element of the case on the part of the defendant is that sometime after considerable negotiating with the railroad company, and frequent visits on the part of the plaintiff to the defendant's office in Rochester, that she rather forcibly said she would get a switch in. Now, the defendant alleges that she told him not to bother any more about it, that she would get the switch in, thereby taking the position that he was relieved from operating the quarry until she procured the switch. The same principle would hold good as in the former instructions that were given you; if that switch were necessary

for the operation of this quarry, the fact that the quarry had not been operated for some months, and the matter had been before these people and nothing having been done, would be an element to consider in connection with what occurred at that time between the parties; if she told him that she released him from the lease; but the fact remains that the defendant still retains the lease which he had upon the premises, and under the terms of that lease was bound for the rental, unless he was absolutely prevented from operating the lease because they could not get a switch in, and they could not get a switch in because the plaintiff was in the way and refused to acquiesce in certain matters and conditions that were imposed by the railroad company. Whether the railroad company had any right to demand these conditions would be another question; and whether or not the plaintiff would have the right of action against the railroad is another question. The only matter which you must consider is whether in this case the defendant is liable to the plaintiff for the rental under the terms of this lease.] [5]

Plaintiff presented this point:

1. If the jury find that the quarry can be operated with the switch now on said leased premises, which the defendant has the use of by the terms of the lease, your verdict should be for the plaintiff. *Answer:* This point is affirmed. [6]

Verdict and judgment for plaintiff for $539.50. Defendant appealed.

*Errors assigned* were (1–6) above instructions, quoting them.

*J. F. Reed*, for appellant.

*Winfield S. Moore*, with him *Alfred S. Moore*, for appellee.

OPINION BY ORLADY, J., July 10, 1902:

This action of assumpsit was brought to recover rent or royalty, alleged to be due according to the terms of an article of agreement or lease, entered into between the parties, under which the plaintiff leased a quarry, located on the line of the Pittsburg & Lake Erie Railroad, for the purpose of mining and removing stone therefrom. The quarry had been opened

and operated for some time, and in the lease it was stipulated as follows : " Said lessee shall have the right to use the switch now located and constructed along said lease, and shall also have the right to construct another switch from the main track of the Beaver & Elwood Railway through and on to said leased premises. . . . It is agreed, if the charge for switching cars to and from the Beaver & Elwood Railway shall exceed the sum of twenty-five cents per car, such excess shall stand as a credit on the royalty herein reserved and stipulated, when paid by said second party." It appears that the Beaver & Elwood Railway Company in securing their right of way had entered into an agreement with Matthew Skillen, (now deceased) the husband of the plaintiff, to put in switch connections with this quarry, and not to charge more than twenty-five cents freight per car to the connecting main line. The defense to the plaintiff's claim was that the railroad company refused to extend the switch already in at the request of the defendant, or to furnish cars to be operated over the siding, unless he could secure a cancelation of the contract between the Beaver & Elwood Railway Company and Matthew Skillen, and would pay at the rate of seventy-five cents per car. The plaintiff refused to cancel the agreement, and the defendant did not do anything further toward operating the quarry. The agreement provided that $500 " shall be the minimum amount of royalty which said lessee shall pay to the lessor by virtue of the within lease annually," and this action was brought at the expiration of the first year. The case was submitted to the jury in affirmance of the plaintiff's first point, as follows : " If the jury find that the quarry can be operated with the switch now on said leased premises, which the defendant has the use of, by the terms of the lease, your verdict should be for the plaintiff ; " and, in the charge, the jury were instructed : " If, however, the Pittsburg & Lake Erie Railroad Company placed this condition upon the erection of a switch there, and it was impossible for the defendant to operate the quarry without this additional switch, then he would be relieved from the payment of this money, as it would be no fault on his part, if he made an honest effort to meet the requirements of the Pittsburg & Lake Erie Railroad Company, and they refused to put the switch in unless the other contract held

by Mrs. Skillen was released, thereby rendering it impossible for him to operate the quarry."

The parties reduced their contract to writing after a full understanding of the situation. While the defendant alleges that he had not seen the contract between Matthew Skillen and the Beaver & Elwood Railway Company, he admits that he knew of its existence, and his allegation that the railroad company refused to furnish cars for operation of the quarry on the siding as it existed at that time is not supported by the evidence. The railroad company required a cancelation of the contract before they would extend the switch that was in or put in a new one, and that they should be released from the provisions of the Skillen contract so far as its application to this new part was concerned. The cars were refused when requested for the reason that at that time they were short of cars and could not supply them, but the railroad's representative denied that they refused generally to put in cars on this siding. The principal defense was that with the switch as it was when the lease was signed the quarry could not be operated in the manner the defendant desired. It was also shown that the quarry and siding had been operated successfully prior to the making of the contract between these parties so as to give the plaintiff a net royalty of $167 during twenty-one days' operation of the quarry. There is nothing in the agreement to warrant the contention that the plaintiff was to surrender any special contract that she had with the railroad company, nor that she was to be in any way responsible for the railway company's refusal to deliver the cars at the request of her lessee. Whether or not the defendant wilfully refused to fulfil his contract was purely a question of fact, and this was fairly submitted to the jury, and the extenuating circumstances which he alleged in support of his defense were not of a character to relieve him of his duty to perform his contract to the extent of his ability. His contract was an absolute and unqualified covenant to operate the quarry as it then existed, and his refusal for a whole year to operate it was provided for in a clause in the agreement, which stated that he should pay $500 as a minimum annual royalty, and it cannot be evaded by showing that the performance of the act would not benefit the defendant. The idle quarry was of no benefit to Mrs. Skillen, and

the refusal of the defendant to cancel the contract at her request evidenced a disposition on his part to force conclusions with her, so that he might buy the property at one half the price she stated she had been offered for it. It is enough for us to say that the parties contracted for the thing to be done and the damages for not doing it, and it is never open to the covenantor to say that the thing he obligated himself to do would not be as profitable to him as he expected it would be when he made his contract: Springer v. Citizens' Natural Gas Co., 145 Pa. 430; Gibson v. Oliver, 158 Pa. 278; Cochran v. Pew, 159 Pa. 184.

The assignments of error are overruled and the judgment is affirmed.