[Sac. No. 2877.   Department One.—June 4, 1912.]

## C. L. McCOMBER, Respondent, v. J. M. KELLERMAN, Appellant.

DISTRICT COURT OF APPEAL—JURISDICTION—BREACH OF COVENANTS IN OIL LEASE FOR PAYMENT OF RENT.—An action to recover a money judgment in a sum less than two thousand dollars, alleged to be due upon certain covenants for the payment of rent contained in an oil lease, is within the appellate jurisdiction of the district court of appeal.

LEASE OF OIL LANDS—CONSTRUCTION OF COVENANTS FOR RENT IN EVENT OF NON-PROSECUTION OF WORK.—Under a lease of oil lands, whereby the lessor granted to the lessee the exclusive right to enter upon the lands and drill wells thereon for the extraction and removal of oil, paying therefor a specified royalty to the lessor, and the lessee agreed to commence drilling within ninety days and thereafter to prosecute such work with reasonable diligence continuously to success or abandonment, a further provision, that in the event the lessee fails to commence such work within that period, he shall pay the lessor specified monthly sums for a determined period until the drilling is commenced, when, if the drilling shall not have then been commenced, the lease should be forfeited, should be construed as fixing the price, in the nature of rental, which the lessee was to pay for the privilege of preserving and continuing his unexercised right to begin the work, and not as an attempt to fix a penalty or liquidated damages.

ID.—LIQUIDATED DAMAGES—EXTREME DIFFICULTY IN FIXING DAMAGES.—The provision for such monthly payments, even if the same were considered as liquidated damages, is valid and enforceable, by reason of the nature of the case and the extreme difficulty of fixing damages arising from the breach of such contract.

ID.—PROVISION FOR SUSPENSION OF WORK OF DRILLING UPON FALL IN PRICE OF OIL.—Where such lease unconditionally required the lessee to place a derrick and drilling outfit on the land and to begin drilling on or before ninety days from the date of the lease, or to pay the

monthly rental afterward as provided, subsequent provisions therein, obligating him to "drill, operate, and pump" the wells as long as the price of oil remained above seventy-five cents per barrel, and to pump the wells until the price fell below sixty cents per barrel, and authorizing him to "suspend" drilling operations until the price reached seventy-five cents per barrel, did not confer upon him the right to refrain from commencing drilling operations until the price of oil reached the price specified.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order refusing a new trial. Charles Monroe, Judge.

The facts are stated in the opinion of the court.

Jones & Weller, for Appellant.

John W. Kemp, John S. Mitchell, and Kemp, Mitchell & Silberberg, for Respondent.

SHAW, J.—The appeal is from the judgment and from an order denying the defendant's motion for a new trial.

The complaint states a cause of action to recover the sum of eighteen hundred and fifty dollars alleged to be due upon certain covenants for the payment of rent contained in a so-called oil lease. The appeal was taken to the district court of appeal for the second district. That court, conceiving it to be a case not within its jurisdiction under the constitution, made an order, as provided by the rules of this court, transferring the case to this court because of the fact that the appeal was supposed to be taken to the wrong court. In this the district court appears to have erred. The complaint is a simple action for a money judgment amounting to less than two thousand dollars and, under the constitution, the appellate jurisdiction is in the district court of appeal. To set at rest all question concerning jurisdiction, we make a formal order transferring the cause from the district court of appeal to the supreme court.

The action is based upon a certain agreement executed between the plaintiff and defendant on June 20, 1908. By this agreement the plaintiff granted to the defendant the exclusive right to enter upon the land and drill wells thereon for the

extraction of oil and remove the oil so extracted, paying therefor a certain specified royalty to the plaintiff. The defendant therein agreed that he would place a derrick and drilling outfit on the land and commence drilling on or before ninety days from the date of the lease, and would thereafter prosecute the work of drilling said well with reasonable diligence continuously to success or abandonment. The lease then proceeded with the following clause:—

"It is understood and agreed, however, that in the event of the failure of the party of the second part to place a derrick and drilling rig upon the above described premises and commence drilling within the said ninety days and prosecute said drilling continuously and in good faith, as aforesaid, said second party agrees to pay to said first party, until drilling is so commenced and diligently prosecuted as aforesaid, the following amounts, viz.: For the first two months after the expiration of said period of ninety days, the sum of one hundred and fifty ($150.00) dollars per month; for the next four (4) months the sum of two hundred ($200.00) dollars per month, and for the next six (6) months, the sum of two hundred and fifty ($250.00) dollars per month, said payments to be made on the 20th day of each month for the preceding calendar month, but in no event shall the party of the second part be allowed more than one year and three months in which to commence drilling said first well, and if the said party of the second part shall fail to commence said drilling operations within one year and three months from the date of this lease, or fail to make any of the payments as above set forth, then this said lease shall be void and the party of the second part shall forfeit all right to the possession of any of the said premises under this agreement and shall not be entitled to commence drilling operations thereon according to the terms of this lease or otherwise."

It further provided that if oil was not found in the first well drilled, the second party would commence another well within ninety days and prosecute the same to completion, or, failing to do so, he would pay similar rent for a similar period, and that he should thereafter continue the operation of drilling wells on said land with at least one string of tools until he should have drilled at least one well on every five acres of the land.

The defendant did not enter upon the land or begin any drilling operations thereon, nor do anything whatever under the provisions of the lease. The plaintiff sued for the payments accruing under the clause of the lease above quoted for the period of nine months ending June 20, 1909. There is no allegation that the plaintiff suffered any damage by reason of the failure of the defendant to enter upon the premises and drill wells thereon. The defendant contends that the effect of the above clause is to impose the payments mentioned as a penalty, or as liquidated damages for the breach of the agreement to begin the drilling of a well, and not to provide a rental for the premises during the period of delay allowed by the contract, or a price for the continuation of the right to begin during such delay; that if it is a penalty it is void under section 1670 of the Civil Code, and if liquidated damages the judgment is erroneous because it was neither alleged nor proven that the nature of the case is such that it would be extremely difficult or impracticable to fix the damages, referring to section 1671 of the Civil Code, allowing liquidated damages in such cases. In support of these contentions he cites *Jack* v. *Sinsheimer*, 125 Cal. 563, [58 Pac. 130]; *Long Beach* v. *Dodge*, 135 Cal. 401, [67 Pac. 499], and other cases.

We do not think the agreement properly bears this construction. It gives the defendant the right to take possession of the land for the purpose of erecting a rig thereon and drilling wells therein and to continue such possession thereof for that purpose for the entire period of fifteen months therein provided as the utmost limit of time within which the defendant must begin operations. The specified price appears to have been provided and fixed as the price which the defendant was to pay for the privilege of preserving and continuing his unexercised right to begin, in case he should see fit to or should be compelled to delay the beginning of the work for more than ninety days after the date of the lease. It was clearly in the nature of rental for the premises or compensation for the right, and not an attempt to fix a penalty or liquidated damages.

But if it were considered as liquidated damages, the complaint and proof are sufficient to support the judgment. The nature of the case and the extreme difficulty of fixing damages arising from the breach of such a contract are fully shown by

the lease itself. This was directly decided in *Escondido etc. Co.* v. *Glaser*, 144 Cal. 500, [77 Pac. 1040].

The fifth·clause of the lease was as follows:—

"The party of the second part agrees to drill, operate and pump said wells constantly and with due diligence (holidays, Sundays and unavoidable accidents excepted) as long as the price of oil remains above seventy-five cents per barrel in that district for oil of similar quality, but should the price of oil go below seventy-five cents per barrel, then the party of the second part shall have the right to suspend all drilling operations until the market price in that district for oil of a similar quality shall have reached the price of seventy-five cents per barrel of forty-two gallons.

"It is understood, however, that the party of the second part shall continue to pump all of said wells until the price of oil shall go below sixty cents per barrel of forty-two gallons each, then he may cease pumping until the market price has again advanced to sixty cents per barrel."

The complaint does not allege that the price of oil in the district in which the land was situated was seventy-five cents a barrel or more during the period in question. The defendant contends that this clause absolved him from the duty of beginning to drill the wells as long as the price of oil was less than seventy-five cents per barrel, and that the complaint should have alleged that it was of that market value at the time. We need not determine this question of pleading. The answer alleged the fact that the price of oil did not reach seventy-five cents per barrel during the entire period after the making of the lease. The court found this allegation to be true. Whatever benefit the defendant is entitled to from this fact he has secured from this finding, and the failure to state it in the. complaint does not prejudice him.

His contention in this behalf is that under the fifth clause above quoted, he was not required to begin drilling operations on the land until the price of oil in that district had reached seventy-five cents a barrel. We do not think the clause so provides. By the previous portions of the lease he was unconditionally required to place a derrick and drilling outfit on the land and begin drilling on or before ninety days from the date of the lease, or pay the monthly rent afterward as provided. The fifth clause did not exempt him from doing this.

The price was below that sum when the lease was made. The clause provided that he should drill, operate and pump the wells constantly as long as the price remained above seventy-five cents a barrel, and that if it fell below that sum he should "have the right to *suspend* all *drilling* operations" until the price again reached that sum. Pumping was to continue until the price fell below sixty cents. The price could not "go below" seventy-five cents, in the ordinary meaning of that phrase, unless it had reached that sum. The lessee could not "suspend" operations which he had not begun. The language was evidently chosen upon the theory that he should at all events begin the drilling of a well in good faith, but that after having begun he might be allowed to suspend such drilling until the price rose to seventy-five cents. The respondent contends with much force that this clause could not become operative until he had drilled a well and discovered oil therein. This argument is based upon the part of the clause which provides that the price stated should be for "oil of a similar quality," that is to say, oil of a quality similar to that of the wells to be drilled on said land by the defendant. Obviously the quality of such oil could not be ascertained until the oil was discovered, and, hence, the price of such oil in the district could not be known until the oil was produced. In view of the fact that the price of oil was less than seventy-five cents a barrel at the time the lease was executed, there is reason for the contention of respondent that the clause was not intended to be effective until after the oil had been produced. But inasmuch as the defendant never began operations at all, and the clause clearly confers only the right to suspend drilling operations and not the right to refrain from commencing them, we do not find it necessary to determine whether it did or did not take effect before the production of oil began.

No other points are made in support of the appeal. We find no error in the record.

The judgment and order are affirmed.

Angellotti, J., and Sloss, J., concurred.