[L. A. No. 4256.  In Bank.—September 24, 1919.]

F. R. BURROWS et al., Respondents, v. PETROLEUM
DEVELOPMENT COMPANY (a Corporation), Ap-
pellant.

[1] CONTRACT — CONSTRUCTION — SITUATION OF PARTIES AT TIME OF
EXECUTION.—A contract should be construed with respect to the
situation in which the parties were at the time it was made.

[2] ID.—DRILLING OF OIL WELL—OBLIGATION OF DRILLER—CONSTRUC-
TION OF CONTRACT.—In this action for damages for an alleged breach
of contract to drill a well to a depth of two thousand five hundred
feet on certain land covered by an option to purchase, it is held the
contract did not require the defendant to reach a depth of two
thousand five hundred feet within the period of the option, even if
oil were not found, but merely to drill diligently through the period
of the option unless within that period a depth of two thousand five
hundred feet was reached or oil in the paying quantities specified by
the contract found.

[3] ID.—TAKING UP OF OPTION BY DEFENDANT—OBLIGATION UN-
CHANGED.—The obligation of the defendant under such contract
was not changed by the defendant's action in taking up the option
before its expiration, and its refusal to continue drilling long after
the expiration of the contract period was not a breach of the con-
tract.

APPEAL from a judgment of the Superior Court of Kern
County. Milton T. Farmer, Judge. Reversed.

The facts are stated in the opinion of the court.

E. W. Camp, U. T. Clotfelter, M. W. Reid and Robert
Brennan for Appellant.

John T. Thornton, F. W. Henshaw and Henshaw, Black
& Goldberg for Respondents.

OLNEY, J.—This is an appeal by the defendant from a
judgment against it for forty thousand dollars as damages
for a breach of contract. The contract was one between the
plaintiff Burrows and the defendant, and the other two plain-
tiffs are interested only as assignees of Burrows of partial
interests under the contract. For simplicity in discussion, we

shall treat the action as one by Burrows as sole plaintiff. The facts are:

In May, 1909, Burrows held five options for the purchase of adjoining tracts of land in the vicinity of the Kern County oil field. The land had not been explored for oil. Each of the options specified the amount to be paid as purchase price and the time within which it had to be paid. One of the options, which we may call option A, contained no provision for drilling, but each of the others provided as a condition of its continuance during the term specified that the option-holder should immediately begin and diligently prosecute the drilling of a well on the land covered by option A.

Shortly after acquiring these options, Burrows assigned them to the defendant under the contract involved here. That contract provided, in effect, that the defendant should immediately begin and diligently prosecute the drilling of a well on the land covered by option A to a depth of at least two thousand five hundred feet, unless oil in certain specified quantities should be sooner found. The alleged breach of contract for which damages are here claimed is the failure of the defendant to drill a well to this depth of two thousand five hundred feet. If oil were not found within this depth in the quantity specified, the contract provided that the defendant had the right to terminate the agreement. On the other hand, if oil were found, the defendant was obligated to exercise the option and purchase the lands, in which case it was to convey certain specified portions thereof equal to three-eighths of the acreage to the plaintiff. The contract also provided that the well should be sunk at a point on the land included in option A to be designated by the plaintiff, but that neither the well nor the governmental subdivision on which it was located should be conveyed to the plaintiff.

Following the making of the contract the defendant began the drilling of a well at a point designated by the plaintiff and proceeded diligently with it. When the well had reached the depth of nearly, but not quite, two thousand five hundred feet, a showing of oil was found, but not in the quantity specified by the contract as relieving the defendant of its obligation to continue drilling, or as imposing on it the obligation to take up the options. The time, however, of option A, which had been extended, was about to expire. It was the key option, as the well was on the land covered by it

and the other options were conditional on drilling a well on that land. The plaintiff and defendant, acting through the plaintiff, attempted to secure a further extension of option A, but were refused. Thereupon, although, as we have said, the defendant was under no obligation to do so, it took up the options and conveyed to the plaintiff the portion of the land which he was to receive.

The defendant continued with the work on the well, but the greatest depth reached was either 2,465 or 2,485 feet, or thirty-five or fifteen feet, as the case may be, short of the specified distance. At this point, through some mishap, which it is not claimed was not reasonably incident to such operations, the well was spoiled. The defendant thereupon promptly started another well and proceeded with its drilling until a depth of eight hundred feet or thereabouts was reached, when this well also was spoiled. The defendant then refused to drill again and this refusal is the alleged breach of contract relied on. There is no allegation or claim that up to this time the defendant had not been proceeding diligently with the drilling as required by the contract. The time when the second well was spoiled and the defendant ceased drilling was something over a year and a half after the expiration of the prescribed time of option A as last extended.

The only allegation of damage in the complaint is that the cost of drilling a two thousand five hundred foot well at the point fixed by the contract—such point being on the defendant's, not the plaintiff's land—would be forty thousand dollars. The only proof of damage at the trial was proof of this cost, and this cost is the amount allowed the plaintiff by the judgment of the trial court.

Two questions arise upon the foregoing facts. The first is: Did the refusal of the defendant to go on with drilling after the failure of the second well and at a time subsequent to the expiration of the period of the options, constitute a breach of its contract? The second is: Assuming a breach, is the cost of such well, as distinguished from its value to the plaintiff, that is, its beneficial effect upon the value of his land, he having no direct interest in the well, the correct measure of damages?

In order to determine whether or not there has been a breach of the contract, it is necessary to determine just what

the obligation was which it is claimed was broken. **[1]** The contract should, of course, be construed with respect to the situation in which the parties were at the time it was made. That situation was that the plaintiff held options merely on the land to be drilled, and that these options would expire at the end of a fixed and rather short period. Under these circumstances the contract transferred the options from the plaintiff to the defendant upon the conditions that the latter was to drill on the land and if oil were found in paying quantity, such quantity being specified, it was to take up the options, and that if the options were taken up, a certain portion of the land was to be conveyed to the plaintiff. The portions of the contract with reference to the defendant's obligations to drill and to take up the options, which are the portions particularly material here, are as follows, epitomizing them in part:

"First. That the Company [the defendant] on or before 22nd of May, 1909 [the contract is dated May 8, 1909], shall commence the work of" drilling a well at a designated point, "and will thereafter prosecute the drilling of such well diligently to a depth of at least twenty-five hundred feet unless crude petroleum" in certain specified amounts should be developed sooner. "Accidents, breakage of machinery and other casualties incident to the drilling of such well shall be excepted in determining whether such well is being or was drilled diligently.

"Second. That if crude petroleum shall be developed in said well in the quantities above stated, the Company shall exercise all or any [and every?] of said options and purchase all or any of said lands in accordance with their terms from the givers of said options if the latter or any of them can convey a title thereto free and clear of encumbrances."

In agreeing upon the foregoing provisions the parties must have had in mind that the right to drill would expire with the expiration of the options and that the only way they had as of right to extend this time was to take the options up. Nevertheless, the only provision in the contract requiring their taking up is the one quoted that they shall be taken up if oil in certain quantities is found, in which case the defendant is no longer obliged to continue drilling. It is apparent, therefore, that the parties contemplated both that drilling should cease upon the expiration of the options if they were not

taken up, and also that the defendant was under no obligation to take them up unless oil in paying quantities were found before that time.

Nor is there anything in the contract requiring the defendant to reach a depth of two thousand five hundred feet *within the period of the options,* even if oil were not found. Its obligation is to drill diligently, and the provision relative to reaching a depth of two thousand five hundred feet is merely that the defendant can stop when this depth is reached, even if oil be not found. It is a limitation on the obligation, not an imposing of an affirmative and most drastic burden. There is a very great difference between agreeing to drill diligently during a limited and fairly short time until a depth of two thousand five hundred feet is reached and agreeing absolutely to reach such depth within that time. There is nothing whatever in the contract to support the view that the defendant insured a well two thousand five hundred feet deep within the period of the options, unless oil were found sooner, diligence or no diligence, but, on the contrary, the express language of the obligation is only that the defendant shall "prosecute the drilling of such well diligently."

The necessary construction of the contract, the thing which the parties must of necessity have had in mind, was, therefore, that the defendant's obligation to drill diligently would cease with the expiration of the options, unless sooner terminated by reaching a depth of two thousand five hundred feet or finding oil, and that there was no obligation resting on it to reach that depth within that time, provided only that it drilled diligently. This conclusion can be tested by assuming in this case that the defendant did not take up the options, as it was not required to do, and had gone on, without reaching a depth of two thousand five hundred feet or finding oil, drilling diligently until the options expired and it could no longer drill. Could it be claimed under these circumstances that the defendant had not fulfilled its contract to the letter? It is certain that it could not.

We have devoted this much time to what seems to us a very apparent proposition, namely, that the defendant's obligation to drill was only to drill with diligence during the period of the options, because we believe it is the essential point in the case. The defendant did drill diligently during the entire period of the options and in fact for more than a year

and a half after, and no claim is made here that it did not. The claim is that long afterward it refused to continue further.

But, it may be said, the options did not expire, the defendant took them up, and its right to continue drilling for the benefit of itself and the plaintiff was, therefore, not lost. But the question here is not one as to the right to continue, but as to the obligation to continue, and that obligation must be determined, as it must have been understood at the time the contract was made. At that time the parties must clearly have understood that the defendant's obligation would expire with the period of the options. It would be indeed a remarkable construction to put upon the contract to say that it meant that if the defendant, voluntarily and without any obligation so to do, should take up the options for the joint benefit of itself and the plaintiff at an expense of thirty-three thousand five hundred dollars, it would do so only under penalty of being obligated to continue indefinitely, no matter what the time and expense might be, to drill until either a well two thousand five hundred feet deep was obtained or oil was found. Yet this action, unwittingly in all probability, is nothing more than an attempt to impose just that penalty. The defendant was under no obligation to take up the options. All it had to do at the time it took them up was to go on diligently with the well, as it was doing and did, and let the options expire, and it would be free and clear of any reasonable possibility of claim. It would be wholly unreasonable to hold that by taking them up it assumed any obligation different or more extensive than the contract originally provided for, particularly one so different and so much more burdensome as the absolute obligation here insisted on. The taking up of the options worked no detriment to the plaintiff and could work none, but quite the contrary. It could only work a benefit to him and did so. Its sole effect has been that the plaintiff has acquired without cost to him several hundred acres of land which he would otherwise not have received, and has had the benefit, if there be any, of continued exploration by the defendant for a very considerable period longer than it was contemplated by the contract such exploration without discovery would continue. Such a change of position, wholly beneficial to the plaintiff, cannot reasonably

be made a ground for imposing on the defendant an obligation which most certainly it did not otherwise assume.

It may be said, also, that if the options had been extended, instead of being taken up, the defendant's obligation to drill would have continued during the time of such extension, and the effect of taking them up was to secure such extension. The key option, option A, was in fact extended twice and it was only on the approach of the expiration of the second extension that the land was purchased. It is probably true that by these extensions obtained at its instance or at the joint instance of itself and the plaintiff, the defendant's obligation to drill was likewise extended, and that the same would have been true if further extensions had been similarly obtained. But the defendant's obligation in the case of extensions merely of the options would still remain essentially the same. It would be still an obligation to drill diligently during a certain time, and as such might fairly come within both the scope of the contract and the original contemplation of the parties. But to give the same effect to a taking up of the options, is, as we have said, to impose a wholly different obligation. The time element is removed and the defendant's obligation is no longer one merely to drill diligently, but is one to insure a well two thousand five hundred feet deep, unless oil be found at a less depth, from which no amount of diligence will excuse it. So different an obligation cannot be said to come within the scope of the contract or the original contemplation of the parties.

It may be said, also, that the defendant, by continuing to drill after the period of the options had expired, itself put a construction on the contract that it was obligated so to continue. This can be truly said only if the natural inference from the fact of its continuing is that it did so because it believed itself obligated. It is only in case the defendant's action in continuing to drill can be reasonably explained only on the supposition that it believed itself bound to do so, that it can be said that its action evidences a belief on its part that it was so bound. But this it not the fact. There is another and most apparent explanation. The defendant was then the owner of several hundred acres of possible oil lands. It had invested in them some thirty-three thousand five hundred dollars, as their purchase price, plus the cost up to that time

of the well it was drilling. This cost was in the neighborhood of twenty-five thousand dollars more. Under these circumstances the most natural thing for the defendant to do was to continue its exploration, whether it was obligated so to do or not, in order to develop the property it had acquired and to realize on the investment it had made. Its action in continuing exploration is fully explainable on this ground and does not give rise to any inference that the defendant continued because it believed itself bound to continue. Bound or not bound, the natural thing for it to do was to continue.

Finally, it is argued that the terms of the several deeds by the defendant to the plaintiff made as each of the options was taken up and conveying to the plaintiff the portion of the land he was to have, indicate that the obligation of the defendant to drill was to continue. The language relied on varies slightly as between the different deeds, but the variations are immaterial. Taking the language in one as typical, it consists in a recital that the deed is made by the defendant "in fulfillment of a *part* of its obligations" to the plaintiff under the contract here involved. The answer to this argument is that the recital is strictly accurate under any theory of the case. Each deed—conveying only a part of the land the plaintiff was to have—was by itself of necessity in part fulfillment only of the defendant's obligation, no matter what view may be taken of the contract.

[2] Summing the discussion up, it seems to us that the fair construction of the contract, in fact, the only possible reasonable construction, is that the defendant's obligation under the contract at the time the parties made it was to drill diligently through the period of the options unless within that period a depth of two thousand five hundred feet was reached or oil in the paying quantities specified by the contract found. [3] It also seems to us clear that this obligation was not changed by the taking up the options, and in particular it was not transformed into the very different obligation of guaranteeing either a well two thousand five hundred feet deep or the finding of oil. Such being the obligation of the defendant, its refusal to continue drilling long after the expiration of the period during which it was required to drill was not a breach of its contract. It follows that plaintiff has no cause of action on the pleadings and

proof presented.   This conclusion renders unnecessary a consideration of the question as to the measure of damages.

Judgment reversed.

Shaw, J., Melvin, J., Angellotti, C. J., and Lawlor, J., concurred.

WILBUR, J.—I concur in the judgment for the reasons stated in the main opinion, and for the further reason that if we assume, as the respondent contends, that the agreement required the appellant to sink the well to a depth of two thousand five hundred feet, the damages for breach of such an agreement, under the circumstances stated, are too speculative to justify a recovery of substantial damages.   In this case the well was sunk within fifteen feet of the required depth, oil was struck, and property values were correspondingly enhanced, and upon the strength of that showing the appellant exercised the options and conveyed to the respondent all the land it was required to convey in the event that the well had been completed or oil struck in paying quantities. If the well had been sunk fifteen feet deeper, it would either have enhanced or depreciated the value of the surrounding property, and the question of whether it would enhance or decrease such value is purely speculative.   (*Escondido Oil Co.* v. *Glaser,* 144 Cal. 494, [77 Pac. 1040]; *McComber* v. *Kellerman,* 162 Cal. 749, [124 Pac. 431]; *Taylor* v. *North Pacific Coast R. R. Co.,* 56 Cal. 317.)

Lennon, J., concurred.