[Civ. No. 4462. First Appellate District, Division One.—March 13, 1923.]

E. B. & A. L. STONE COMPANY, Respondent, v. DE FREMERY WHARF & LAND COMPANY et al., Appellants.

[1] CONTRACTS—USE OF WHARF—MINIMUM RENTAL—DEFAULT—PENALTY.—The contract for the use by plaintiff of defendants' wharf having provided that plaintiff would handle a portion of its rock, sand, and gravel business over said wharf at a price of five cents per cubic yard or long ton, with the stipulation that if plaintiff failed to move a given tonnage per year it should pay for the short tonnage at the rate of five cents per ton or cubic yard, such provision respecting payment did not constitute an attempt to fix a penalty or liquidated damages for failure to use the wharf, but was in the nature of a minimum rental for the wharf or compensation for the right to use the same; and where plaintiff did not move the stipulated tonnage over the wharf, defendants were entitled to recover the deficiency of rental, notwithstanding the contract provided that, in the event of a violation by plaintiff, defendants should have the right to terminate the contract and retake possession of the wharf "and that such retaking of possession . . . shall be the extent of the penalty" defendants "may exact of" plaintiff.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. George A. Sturtevant, Judge. Reversed.

The facts are stated in the opinion of the court.

Moran & Heer, Charles S. Wheeler, John F. Bowie and Nathan Moran for Appellants.

W. F. Williamson for Respondent.

ST. SURE, J.—Defendant de Fremery Wharf & Land Company was the owner of certain waterfront property in Oakland upon which it conducted a wharfage business. In 1914 the Wharf Company entered into a contract with plaintiff E. B. & A. L. Stone Company for a period of years. Defendant Barron Estate Company, during the second year of the contract, acquired, by purchase, the de Fremery wharves, hence its presence as a party to the

action. Its interest is identical with that of the Wharf Company. In the aforementioned contract the Stone Company agreed to "handle and route the transportation of a portion of its rock, sand and gravel business, incoming . . . upon and through the wharves and bunkers of the wharf company," at a price of five cents per cubic yard or long ton, with the stipulation that if plaintiff failed to move the given tonnage per year it should pay for the short tonnage at the rate of five cents per ton or cubic yard.

[1] The contract further provided:

"The Stone Company further guarantees to the Wharf Company that the aforesaid business handled by it upon or over the property of the Wharf Company will be sufficient to produce to the Wharf Company a sum of money, at the rate per ton aforesaid, of not less than Three Thousand Dollars (3,000.00) for each and every year during the first two of the said five (5) years, and not less than Three thousand six hundred (3,600.00) Dollars for each and every year during the last three (3) years of the said five (5) years. The Stone Company further agrees that it will, on or before the 15th day of each calendar month during the said five (5) years, make settlement with and payment to the Wharf Company for the business done by it as aforesaid during the preceding month, and if such business, at the end of each year during the time this contract shall remain in force, be found not to amount to the minimum sum applying as aforesaid to such preceding year, the Stone Company agrees to pay to the Wharf Company any deficiency existing to bring such payment up to said minimum."

And a further paragraph reads:

"It is mutually understood and agreed that in the event of a violation of the Stone Company of any of the covenants or agreements herein contained on its part to be performed, the Wharf Company shall have the right, by notice in writing, to terminate this contract and immediately thereupon to take possession of any portion of the said wharves or property then occupied by the Stone Company, *and that such retaking of possession of said wharves and property shall be the extent of the penalty the Wharf Company may exact of the Stone Company."* (The con-

cluding clause is italicized by us for the reason that we intend to hereinafter make particular reference to it.)

At the end of the first year of the operation and performance of the contract there was a deficiency in the aggregate of the monthly tolls, and, after some controversy as to the interpretation of the contract, the Stone Company paid the deficiency. ·

At the end of the second year the tolls paid amounted to less than $1,000, leaving an unpaid deficiency of $2,331.50, which, after demand, remains unpaid.

The action was commenced by the Stone Company for reformation of the contract upon the ground of mutual mistake. The plaintiff alleged in its complaint, in connection with the payment provision of the contract, that it was mutually understood and agreed that "plaintiff might elect either to pay the difference between the amount of tolls actually earned and the said minimum sum, or to make default in such payment and suffer the cancellation of the said agreement by the Wharf Company, defendant herein, but that in the event the said Wharf Company did cancel and terminate the said agreement, such cancellation and termination should be the only remedy or right of the said Wharf Company, and the only liability or obligation of the plaintiff under such circumstances, and that if the said Wharf Company did not cancel or terminate said agreement, plaintiff would only be required to pay the said tolls upon the quantity of such materials actually delivered upon or transported across the property of the said Wharf Company."

And it was further alleged that instead of stating the understanding and agreement of the parties, as in the last paragraph set forth, the contract merely stated what appears in the paragraph hereinbefore quoted containing the italicized clause.

Defendants answered with specific denials and various defenses, and, by way of cross-complaint, sought to recover the unpaid deficiency, amounting to $2,331.50. The trial court denied reformation. It found that a deficiency existed to the amount claimed by defendants, but denied recovery.

Defendants appeal from the judgment denying them relief upon their cross-complaint. The error they complain of is that from the facts as found by the trial court it has

drawn an incorrect conclusion of law and entered a judgment erroneous in law. A reversal is sought directing the entry of a judgment in favor of defendants in accordance with the findings.

Counsel for the respective parties earnestly argue the question as to whether or not the agreement made between the Wharf Company and the Stone Company is a lease. We think it immaterial what the instrument is labeled. Its form is of little account. (*Stockton Savings & Loan Society* v. *Purvis,* 112 Cal. 239 [53 Am. St. Rep. 210, 44 Pac. 561].) We have preferred to call it a contract. The question involved in the appeal is the interpretation of the instrument in accordance with familiar rules found in the Civil Code.

The negotiations for the contract covered a period of several weeks, and were conducted by Mr. A. L. Stone on behalf of the Stone Company, and Mr. Cadman on behalf of the Wharf Company. The proposed contract was prepared by the attorneys for the Wharf Company and delivered to Mr. Stone for his approval, and he added to it the following clause: "And that such retaking of possession of said wharves and property will be the extent of the penalty the Wharf Company may exact of the Stone Company." (This clause appears italicized in a portion of the contract hereinabove quoted.)

The contract, with the additional clause, was accepted by the Wharf Company and executed by the parties.

Up to this point there is no conflict in the evidence. Now comes the rub. Mr. Stone says that it was understood between himself and Mr. Cadman that the contract should provide that the Stone Company might elect to pay the difference between the amount of tolls actually earned and the minimum sum, or to make default in such payment and suffer cancellation of the agreement by the Wharf Company, and that in the event of such cancellation the Stone Company would be relieved of further liability and would only be required to pay tolls upon the quantity of materials actually delivered or transported across the property. Mr. Cadman flatly contradicts Mr. Stone. This issue was tried by the lower court in the suit for reformation. It was finally disposed of when the court found that no grounds for reformation existed, and it can now concern us only in

so far as its consideration may be helpful in construing the contract.

Counsel for defendant contends that "the provision for liquidated penalty or damage is void under Civil Code sections 1670 and 1671. Furthermore, there being no allegation of damage on the part of appellant Wharf Company, and no proof of actual damage so suffered, said appellant was not entitled to recover damages in any amount whatever."

We are mindful that the word "penalty," appearing in the clause added to the contract by Mr. Stone, has a well-defined legal meaning. But considering the whole contract, and viewing it in the light of the facts, circumstances, and situation of the parties, we believe that the use of the word had no particular significance and in no way altered the intention of the parties, so clearly expressed in the instrument. It seems to us that the case of *McComber* v. *Kellerman*, 162 Cal. 749, 752 [124 Pac. 431], contains a complete answer to plaintiff's contention. In the cited case an "oil lease" or mining license was under consideration. The lease provided for rentals reserved in default of licensee's drilling the well. Objections almost identical with those made in the case before us were there interposed. There, as here, the consideration for the contract was the specified price which the defendant was to pay for the privilege exercised or unexercised. "It was clearly in the nature of rental for the premises or compensation for the right, and not an attempt to fix a penalty or liquidated damages." (*McComber* v. *Kellerman, supra.*)

It being admitted that there is an unpaid deficiency of $2,331.50, and the trial court having so found, it was error on its part to refuse defendants recovery. We are, therefore, of the opinion that the judgment should be reversed with direction to the lower court to enter judgment for defendants in the sum of $2,331.50, and interest thereon from February 10, 1917.

It is so ordered.

Tyler, P. J., and Richards, J., concurred.