BLODGET v. COLUMBIA LIVE STOCK CO.†

(Circuit Court of Appeals, Ninth Circuit. October 5, 1908.)

No. 1,581.

DAMAGES—LIQUIDATED DAMAGES—VALIDITY OF STIPULATION.

> In an oil and gas lease, which binds the lessee to drill a well on the property to a certain depth within a specified time, the damages for a breach of such provision being necessarily indefinite, uncertain, and speculative, it is competent for the parties to fix the amount of such damages by mutual agreement, and a provision that in case of the failure of the lessee to drill such well he shall pay a stated sum as liquidated damages is valid and enforceable.

> [Ed. Note.—For cases in point, see Cent. Dig. vol. 15, Damages, § 164 ]

In Error to the Circuit Court of the United States for the Northern Division of the Southern District of California.

W. S. Allen and E. W. Camp, for plaintiff in error.

Byron Waters, for defendant in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

ROSS, Circuit Judge. The defendant in error recovered judgment in the court below in the aggregate sum of $4,500 as liquidated damages, with interest thereon, on three certain leases of land situated in the state of Texas, in which state the leases were also made, to the plaintiff in error, for the purpose of developing oil and gas thereon, upon certain terms and conditions therein stated, each lease running for 25 years, "and as much longer as oil or gas should be produced in paying quantities," and including a provision that the lessee should have seven-eighths and the lessor one-eighth of all the oil and gas so produced by the lessee. Each lease provided that the lessee should, within a certain specified time—

"begin in good faith the sinking upon said premises of such well or wells as may be necessary to thoroughly test the said leased premises for oil and gas, and will thereafter, and as soon as satisfactory location shall be determined, begin the sinking of a deep well, the same to be drilled or sunk to a depth of 1,200 feet, unless pay oil or gas shall be encountered at a less depth, and unless before reaching that depth salt water or some geological formation be encountered that would be recognized among oil operators as a positive evidence that oil or gas would not be encountered at a greater depth. This covenant of the lessee to sink said deep well is mutually agreed to be one of the principal considerations for this lease."

Each of the leases contained these further provisions:

"That all the rights of every nature hereby leased are so leased upon the condition that if the lessee shall not in good faith commence work within the period hereinabove limited, or shall thereafter be in default for a period of 90 days in the performance of any covenants herein contained, then the lessor may at his option immediately terminate this lease, and all rights of any and every nature growing out of or appurtenant thereto of the lessee, by giving him notice in writing of its election to declare this lease and all said rights terminated. * * * In the event the above lease shall be canceled through the default of the lessee, before the lessee shall have completed a well to the depth of 1,200 feet, or discovered pay oil or gas at a lesser depth, under the conditions as hereinbefore provided, the lessee hereby obligates himself to

*Rehearing denied October 26, 1908.

164 F.—20

either forthwith complete said well, or forfeit the sum of $1,500 as liquidated damages for such default."

The case shows that the lessee did nothing whatever under either lease, for which default the lessor terminated each lease more than 90 days after such default. The complaint alleged that the defendant in error sustained damages in the sum of $1,500 under each agreement. The respective parties waived a jury in writing, and tried the case before the court, which made these findings of fact:

"(1) The court finds that each and every of the facts alleged in plaintiff's complaint herein are true, except that allegation in paragraph 7 of each of the causes of action set out in the complaint, to the effect that plaintiff has sustained, by reason of said default, damages in the sum of $1,500, as to which damages the court finds that, by reason of said default on the part of defendant, plaintiff did sustain some damage, but that the amount thereof cannot be determined from the evidence in the case, save that as by the terms of the lease said sum of $1,500 was agreed upon as stipulated damages.

"(2) That defendant did not, in boring any well upon any of the premises leased from plaintiff, encounter any geological formation which would be recognized among oil operators, or which were or are recognized among oil operators, or by defendant, as a positive evidence, or any evidence, that oil or gas would not be encountered at a greater depth."

We think the judgment right. In the very nature of the case the damages that would result to the lessor by a breach of the leases by the lessee would necessarily be indefinite, uncertain, and speculative. It was, therefore, eminently proper that the parties should fix such damages by mutual agreement. In the case of Sun Printing & Publishing Association v. Moore, 183 U. S. 642, 672, 22 Sup. Ct. 240, 252, 46 L. Ed. 366, the Supreme Court, after a review of the authorities on the subject, said:

"It may, we think, fairly be stated that, when a claimed disproportion has been asserted in actions at law, it has usually been an excessive disproportion between the stipulated sum and the possible damages resulting from a trivial breach apparent on the face of the contract, and the question of disproportion has been simply an element entering into the consideration of the question of what was the intent of the parties, whether bona fide to fix the damages or to stipulate the payment of an arbitrary sum as a penalty, by way of security. In the case at bar, aside from the agreement of the parties, the damage which might be sustained by a breach of the covenant to surrender the vessel was uncertain, and the unambiguous intent of the parties was to ascertain and fix the amount of such damage. In effect, however, the effort of the petitioner on the trial was to nullify the stipulation in question by mere proof, not that the parties did not intend to fix the value of the yacht for all purposes, but that it was improvident and unwise for its agent to make such an agreement. Substantially, the petitioner claimed a greater right than it would have had if it had made application to a court of equity for relief; for it tendered in its answer no issue concerning a disproportion between the agreed and actual value, averred no fraud, surprise, or mistake, and stated no facts claimed to warrant a reformation of the agreement. Its alleged right to have eliminated from the agreement the clause in question, for that is precisely the logical result of the contention, was asserted for the first time at the trial by an offer of evidence on the subject of damages. The law does not limit an owner of property, in his dealings with private individuals respecting such property, from affixing his own estimate of its value upon a sale thereof, or on being solicited to place the property at hazard by delivering it into the custody of another for employment in a perilous adventure. If the would-be buyer or lessee is of the opinion that the value affixed to the property is exorbitant, he is at liberty to refuse to enter into a contract for its

acquisition. But if he does contract, and has induced the owner to part with his property on the faith of stipulations as to value, the purchaser or hirer, in the absence of fraud, should not have the aid of a court of equity or of law to reduce the agreed value to a sum which others may deem is the actual value. And, as pertinent to these observations, we quote from the opinion delivered by Wright, J., in Clement v. Cash, 21 N. Y. 253, where it was said (page 257): 'When the parties to a contract, in which the damages to be ascertained, growing out of a breach, are uncertain in amount, mutually agree that a certain sum shall be the damages, in case of a failure to perform, and in language plainly expressive of such agreement, I know of no sound principle or rule applicable to the construction of contracts that will enable a court of law to say that they intended something else. Where the sum fixed is greatly disproportionate to the presumed actual damages, probably a court of equity may relieve; but a court of law has no right to erroneously construe the intention of the parties, when clearly expressed, in the endeavor to make better contracts for them than they have made for themselves. In these, as in all other cases, the courts are bound to ascertain and carry into effect the true intent of the parties. I am not disposed to deny that a case may arise in which it is doubtful, from the language employed in the instrument, whether the parties meant to agree upon the measure of compensation to the injured party in case of a breach. In such cases there would be room for construction; but certainly none where the meaning of the parties was evident and unmistakable. When they declare, in distinct and unequivocal terms, that they have settled and ascertained the damages to be $500, or any other sum, to be paid by either party failing to perform, it seems absurd for a court to tell them that it has looked into the contract and reached the conclusion that no such thing was intended, but that the intention was to name the sum as a penalty to cover any damages that might be proved to have been sustained by a breach of the agreement.' "

In United States v. Bethlehem Steel Company, 205 U. S. 105, 118, 27 Sup. Ct. 450, 455, 51 L. Ed. 731, the court said:

"There has in almost innumerable instances been a question as to the meaning of language used in that part of a contract which related to the payment of damages for its nonfullfillment, whether the provision therein made was one for liquidated damages, or whether it meant a penalty simply, the damages to be proved up to the amount of the penalty. This contract might be considered as being one of that class where a doubt might be claimed, if nothing but the contract were examined. The courts at one time seemed to be quite strong in their views, and would scarcely admit that there ever was a valid contract providing for liquidated damages. Their tendency was to construe the language as a penalty, so that nothing but the actual damages sustained by the party aggrieved could be recovered. Subsequently the courts became more tolerant of such provisions, and have now become strongly inclined to allow parties to make their own contracts, and to carry out their intentions, even when it would result in the recovery of an amount stated as liquidated damages, upon proof of the violation of the contract, and without proof of the damages actually sustained. This whole subject is reviewed in Sun Printing & Publishing Association v. Moore, 183 U. S. 642, 669, 22 Sup. Ct. 240, 46 L. Ed. 366, where a large number of authorities upon this subject are referred to. The principle decided in that case is much like the contention of the government herein. The question always is, what did the parties intend by the language used? When such intention is ascertained, it is ordinarily the duty of the court to carry it out. See, also, Clement v. Cash, 21 N. Y. 253, 257; Little v. Banks, 85 N. Y. 258, 266."

A case quite similar, in some respects, to that at bar—Escondido Oil, etc., Co. v. Glaser, 144 Cal. 494, 77 Pac. 1040—came before the Supreme Court of California, where that court said:

"There are two counts in the complaint. In the first count judgment for $500 as liquidated damages is prayed for, and in the second count actual dam-

ages in a larger amount named. Respondent contends that this is not a case where there could be a valid agreement for liquidated damages, under sections 1670 and 1671 of the Civil Code; but, as there is no special demurrer to the first count on that ground, the complaint, if good for actual damages, is not reached by the demurrer. However, as the case may be hereafter tried on its merits, it is proper to say that, in our opinion, the agreement for liquidated damages should be upheld. The complaint sufficiently states the character and subject-matter of the contract—'the nature of the case,' to use the language of section 1671—to show that upon its breach 'it would be impracticable or extremely difficult to fix the actual damages.' Fixing the amount for damages sustained in contracts for digging oil wells very similar to the one here involved was upheld in Gibson v. Oliver, 158 Pa. 277, 27 Atl. 961, and the cases there cited. And it would seem that damages for breaches of contracts touching future interest in oil wells of unknown value are of such remote and speculative character as to bring them peculiarly within the rule that the parties should have the right to fix them by mutual agreement. In the case at bar the right of plaintiff, under the contract with the insurance company, to test the land, and to acquire a valuable interest therein if the test prove successful, was limited in time, and that right might be lost by a failure of defendant to comply with his contract; and it was quite apparent that in such event it would be entirely impracticable to show plaintiff's loss, or what otherwise would have been his gain. And the small amount provided in the contract herein involved as liquidated damages is certainly not unconscionable."

The judgment is affirmed.