## RISPIN v. MIDNIGHT OIL CO.

(Circuit Court of Appeals, Ninth Circuit. August 6, 1923.)

No. 3994.

1. **Guaranty ⚍66—Guarantor of oil well drilling contract held released, where plaintiff failed to put drilling company in possession.**

Where H. Company contracted with A. Company to drill oil wells on its lands, and obligated itself to deliver possession, and assigned rights in certain of the lands and in the operating contract to plaintiff, and defendant contracted to pay plaintiff certain liquidated damages if the A. Company for any reason failed to drill such wells, plaintiff's failure to put the A. Company in possession discharged it and defendant from liability.

2. **Damages ⚍74—Agreement for liquidated damages not enforced, where there has been no damage.**

Agreement by guarantor to pay certain liquidated damages if oil well drilling contract was not performed will not be enforced, where no damage has been sustained.

In Error to the District Court of the United States for the Second Division of the Northern District of California; William C. Van Fleet, Judge.

Action by the Midnight Oil Company against H. Allen Rispin. Judgment for plaintiff, and defendant brings error. Reversed and remanded, with directions.

A. L. Weil and Forrest A. Cobb, both of San Francisco, Cal. (Harris F. Shaw, of San Francisco, Cal., of counsel), for plaintiff in error.

Dana, Blount & Silverstein, of Denver, Colo., and Dudley D. Sales, of San Francisco, Cal., for defendant in error.

Before GILBERT, HUNT, and RUDKIN, Circuit Judges.

HUNT, Circuit Judge. The Midnight Oil Company brought this action against Rispin to recover $10,000 as liquidated damages and interest thereon. The complaint alleged that in settlement of certain litigation Rispin agreed to pay the Midnight Oil Company $10,000 upon the terms and conditions set forth in a writing signed by Rispin May 13, 1919. The writing recited that, whereas, the Hopewell Oil Company had assigned to the Midnight Oil Company part of the benefits arising from an operating contract dated March 24, 1919, between Hopewell Oil Company, as grantor, and Associated Oil Company, as operator, upon certain tracts of land; and whereas, the first well to be drilled was located on the premises assigned by the Midnight Oil Company, and by said contract the Associated Oil Company had agreed to carry on the work of drilling continuously, barring unavoidable delays, until such well should reach a depth of and test out the known productive oil sands in the Lance Creek field, unless oil should be found in commercial quantities at a lesser depth: Therefore, Rispin "guarantees" that the Associated Oil Company, or its assigns, "will drill and complete a well" on the premises, commencing on or before the 15th day of June, 1919, and proceed, barring unavoidable delays, until such

well should reach the depth of and test out the known productive oil sands in the Lance Creek field; that if the Associated Oil Company, or its assigns, should "for any reason fail to drill and complete said well in manner and form specified," then "because the damage occasioned thereby" to the Midnight Oil Company "would be difficult, if not impossible, to ascertain," and in consideration of the settlement and dismissal of the suit referred to Rispin agreed to pay to the Midnight Oil Company $10,000, as liquidated damages, the amount to be paid on notice of the failure of the said Associated Oil Company, or its assigns, to drill and complete the well as specified. Plaintiff alleged that neither the Associated Oil Company, nor its assigns, ever commenced the drilling of the well. Notification and demand for the $10,000 as liquidated damages are alleged; also that it is impracticable and extremely difficult to fix the actual damages which would be suffered by the plaintiff by reason of the failure of the Associated Oil Company, or its assigns, to drill or commence to drill as guaranteed by Rispin.

A general demurrer to the complaint was overruled, and Rispin answered that on March 24, 1919, the Western States Oil & Land Company made a lease to the Hopewell Oil Company, covering the lands referred to in the agreement heretofore mentioned; that on March 24, 1919, the Hopewell Oil Company contracted with the Associated Oil Company with respect to certain described lands; that afterwards the Hopewell Oil Company assigned to the Midnight Oil Company all its interest, royalties, and benefits in and to the lands referred to in the complaint and arising out of the lease referred to in the complaint; that the Associated Oil Company was ready, able, and willing to commence drilling and to complete the well on the premises described in the complaint on or before June 15, 1919, but that the Midnight Oil Company was unable to deliver possession by that date; that the Associated Oil Company attempted to secure possession, but was prevented by threats and forcible opposition on the part of persons claiming the premises adversely to the Midnight Oil Company; that the Associated Oil Company never has been able to enter upon the premises, and that, but for the failure to deliver possession, the Associated Oil Company would have gone ahead as required. Rispin also alleges that the Associated Oil Company was barred by delays, unavoidable on its part, from beginning to drill on the premises on or before June 15, 1919, and alleged on information and belief that while the Associated Oil Company was excluded from the premises, wells were drilled within the Lance Creek field underlying the premises herein involved, and that it was demonstrated that oil in commercial quantities does not exist under the premises involved, and that plaintiff has sustained no damages; also denies that it would be impracticable or difficult to fix the actual damages suffered by reason of the failure of the Associated Oil Company, or its assigns, to drill.

The operating agreement between the Hopewell Oil Company and the Associated Oil Company recites that, whereas, the Hopewell Oil Company desired to arrange for the operation and development of the lands under the terms of the lease: Therefore it assigns to the Associated Oil Company all of its right, title, and interest in and to the lands un-

der and by virtue of the lease, and subject to the terms thereof. The Hopewell Oil Company agreed to deliver possession of the lands for operation immediately. The Associated Oil Company was to take immediate possession and manage, control, and operate, to begin actual drilling of an oil well on certain lands on or before June 15, 1919, and to prosecute the work continuously, "barring unavoidable delays, until such well shall reach a depth of and test out the known productive oil sands in the Lance Creek Oil field, unless oil in commercial quantities shall be found in said well at a less depth."

General demurrer to the answer was sustained, default of the defendant was entered, and judgment by the court was entered against Rispin for the sum of $12,360 and costs.

[1] The first inquiry is whether the answer stated a defense to the complaint. We think it does, and that it was error to hold otherwise. The contract sued upon is one of guaranty whereby Rispin guaranteed that under conditions specified the Associated Oil Company would drill and prosecute drilling the well. The Associated Oil Company stands in the relation of a principal and Rispin in that of a guarantor. The Midnight Oil Company defaulted, in that it failed to deliver possession as it was obliged to do. By the terms of the operating contract between the Hopewell Oil Company and the Associated Oil Company, the Associated Oil Company was to drill a well on certain lands, which included the land mentioned in the complaint, and the Hopewell Company was under obligation immediately to deliver possession of the lands to the Associated Oil Company for operation under the terms of the lease from the Western States Oil & Land Company to the Hopewell Company. The Hopewell Company assigned its rights to part of the lands in the lease just referred to, and also in the operating contract, to the Midnight Oil Company, and in the written assignment it was expressly provided that the Midnight Company and its assigns should have and hold the assignment subject to all the terms, covenants, and royalties expressed in the lease, which said terms, covenants, and royalties the Midnight Company agreed to keep and perform, so far as the lease related to the land here involved, and subject to the operating contract as to all the terms, agreements, and covenants therein contained. The assignment to the Midnight Company is the one referred to in the instrument made the basis of this action and set up in the complaint of the Midnight Oil Company. Thus we think it is clear that the Midnight Company agreed to put the Associated Oil Company into possession and has failed in its obligation, and but for such failure the Associated Oil Company would have gone ahead and performed.

Taking the facts stated as true, the Associated Oil Company should be discharged from liability under the terms of the operating agreement, and Rispin should be discharged as a guarantor. The principle applicable is that, in the case of a lease which contains express covenants to put the lessee in possession, where there is afterwards a trespass by a third person before the lessee has entered into possession, a breach of contract for which the lessor is liable follows, and if possession is withheld by the lessor, then the lessee may elect to repudiate the contract or bring an action against the lessor for breach of his

agreement. Brandt v. Phillippi, 82 Cal. 640, 23 Pac. 122; Dengler v. Michelssen, 76 Cal. 125, 18 Pac. 138; King v. Reynolds, 67 Ala. 229, 42 Am. Rep. 107. Some well-considered cases hold that, when there is a contract of lease and no stipulation to the contrary, there is an implied covenant on the part of the lessor that when the time comes for the lessee to take possession under the lease there shall be no impediment to the lessee taking possession. King v. Reynolds, supra; Jone, Landlord and Tenant, § 367. The foundation of this just rule is that one who leases agrees to give possession, not merely the chance of a suit, and the lessee expects to enjoy the property, and not the vexatiousness of litigation.

[2] The next point concerns the clause of the contract providing for liquidated damages. Keeping in mind that the complaint does not allege that plaintiff has suffered any damage and that the defendant's answer expressly avers that plaintiff did not suffer any damage at all, it is not necessary to decide whether the clause is to be read as a penalty or as one for liquidated damages, for the reason that, even granting that it must be read as for liquidated damages, it will not be enforced, where no damage whatever has been sustained. In Northwest Fixture Co. v. Kilbourne, 128 Fed. 256, 62 C. C. A. 638, this court considered an agreement which contained a provision that, in the event either party should fail to keep its agreement, the party thus in default should pay to the other party the sum of $10,000 as liquidated damages. Judge Gilbert, for the court, said:

"Conceding the rule to be that, in order to recover a sum as liquidated damages, it is unnecessary to prove actual damage, it is also true that no provision in a contract for the payment of a fixed sum as damages, whether stipulated for as a penalty or liquidated damages, will be enforced in a case where the court can see that no damages have been sustained. It is the general rule that, where the sum in the contract to be paid on the breach thereof is evidently wholly disproportionate to the damages actually sustained, or where it is shown that no actual damage has been sustained by the breach, the courts will deem the parties to have intended to stipulate for a mere penalty to secure performance."

That rule was followed in The Colombia (D. C.) 197 Fed. 661. If, however, upon a trial the case should develop so that it becomes necessary to classify the contract in respect to the provisions for liquidated damages, we are disposed to hold that, when the entire agreement between the parties is considered, the nature of the subject-matter involved and the purpose for which the agreement was made, the intention of the parties was to make an estimate of what would be a fair compensation for the loss sustainable in the event of failure to live up to the agreement. Obviously, in the case of an oil well drilling contract, it would be extremely difficult to fix damages arising from a breach thereof. In Escondido Oil Co. v. Glaser, 144 Cal. 500, 77 Pac. 1040, in an action founded upon an alleged breach of an oil well drilling contract which provided for liquidated damages in case of breach, the court said that, where contracts pertaining to interests in oil wells were involved, damages are of such a remote and speculative character as to bring them peculiarly within the rule that the parties should have the right to fix them by mutual agreement. This court, in Blod-

get v. Columbia Live Stock Co., 164 Fed. 305, 90 C. C. A. 237, had before it a lease made for the purpose of developing oil and gas upon certain, terms and conditions stated in the lease, containing provisions to the effect that, in the event the lease should be cancelled through the default of the lessee under the conditions provided for, the lessee obligated itself either to complete the well or forfeit a specified sum as liquidated damages for such default. Judgment in an action brought to recover damages in the sum named under the agreement as liquidated damages was sustained; Judge Ross for the court, saying:

"In the very nature of the case, the damages that would result to the lessor by a breach of the leases by the lessee would necessarily be indefinite, uncertain, and speculative. It was therefore eminently proper that the parties should fix such damages by mutual agreement."

Sun Printing & Publishing Co. v. Moore, 183 U. S. 642, 22 Sup. Ct. 240, 46 L. Ed. 366; United States v. Bethlehem Steel Co., 205 U. S. 105, 27 Sup. Ct. 450, 51 L. Ed. 731, and Econdido v. Glaser, supra, were cited. In United States v. Bethlehem Steel Co., supra, the court through Justice Peckham, said:

"The courts at one time seemed to be quite strong in their views and would scarcely admit that there ever was a valid contract providing for liquidated damages. Their tendency was to construe the language as a penalty, so that nothing but the actual damages sustained by the party aggrieved could be recovered. Subsequently the courts became more tolerant of such provisions. and have now become strongly inclined to allow parties to make their own contracts, and to carry out their intentions, even when it would result in the recovery of an amount stated as liquidated damages upon proof of the violation of the contract, and without proof of the damages actually sustained. * * * The question always is: What did the parties intend by the language used? When such intention is ascertained it is ordinarily the duty of the court to carry it out."

The more recent case of Wise, Trustee, v. United States, 249 U. S. 361, 39 Sup. Ct. 303, 63 L. Ed. 647, is also in point. There the court said that, when the intention of the parties could be arrived at from the writing, effect must be given to a provision for payment of a designated sum for a breach of that covenant as freely as to any other provision where the damages are uncertain in nature or amount, or are difficult to ascertain, or where the amount stipulated is not so extravagant or disproportionate to the amount of property loss as to show that compensation was not the object aimed at, or such as to imply fraud, mistake, circumvention, or oppression. Justice Clarke, for the court, adverted to cases in support of a contrary view, but said that such decisions for the most part were rendered when the courts were disposed to look upon such provisions in contracts with disfavor, and to construe them strictly, "if not astutely, in order that damages, even though termed liquidated, might be treated as penalties, so that only such loss as could be definitely proved could be recovered." He added:

"The later rule, however, is to look with candor, if not with favor, upon such provisions in contracts when deliberately entered into between parties who have equality of opportunity for understanding and insisting upon their rights, as promoting prompt performance of contracts, and because adjusting in advance, and amicably matters, the settlement of which through courts would often involve difficulty, uncertainty, delay and expense." Jewett, Bigelow & Brooks v. Detroit Edison Co. (C. C. A.) 274 Fed. 30.

The one main purpose of the contract under consideration was the drilling and completion of the well within the time agreed upon, and for reasons and considerations named Rispin deliberately agreed that if the Associated Oil Company, or its assigns, did not perform its contract as specified, he would pay to the Midnight Oil Company $10,000 as liquidated damages, "on notice of the failure of the said Associated Oil Company, or its assigns, to drill and complete said well as above specified."

The judgment is reversed, and the cause remanded, with directions to overrule the demurrer and to proceed in accordance with the views herein expressed.

Reversed.