# Fidelity & Deposit Co. of Maryland v. Jones et al. (two cases).

(Decided Nov. 9, 1934.)

BRUCE & BULLITT for appellant.

A. J. CARROLL and CARROLL & McELWAIN for appellees.

OPINION OF THE COURT BY JUDGE RICHARDSON—Affirming.

These actions were tried as one in the circuit court, and these appeals are prosecuted as one. The issues and the questions of law involved in them are identical; therefore, we shall dispose of them in one opinion.

They were instituted on bonds executed and delivered by the Jefferson Lake Oil Company, Incorporated, principal, and the Fidelity & Deposit Company of Maryland, surety, by which they obligated themselves unto J. Lyle Bayless, Lawrence Jones, and Leodis Leblanc "in the full amount of Twenty-five Hundred ($2,500.00) Dollars, payment of which well and truly to be made," on the condition that the Jefferson Lake Oil Company

"shall well and truly perform and keep" its obligation set forth in a certain lease described in each of the bonds.

Claiming that the Jefferson Lake Oil Company had wholly failed to perform, or attempted to perform, its obligations as set out in the leases, Jones, Bayless, and Leblanc, the beneficiaries of the bonds, instituted these actions in the Jefferson circuit court against the Fidelity & Deposit Company of Maryland to recover as compensation, as per the terms of the bonds, the amount of each bond because of the Jefferson Lake Oil Company's breach of the lease contracts.

In the preparation and the trial of the actions, it was conceded that the Jefferson Lake Oil Company had utterly failed to perform or attempted to perform, the obligations imposed upon it by the conditions, provisions, and terms of the leases.

"The [trial] court ruled that as the wells had not been drilled as provided for by the terms of the bonds that the face amount of the bonds was liquidated damages and refused to let the Fidelity and Deposit go into the question of proof to show the improbability of damage to Jones" et al.

"Jones [et al.] did not offer proof to show probability of damages."

"The court excluded the evidence offered by the Fidelity and Deposit Company," that "tended to prove no loss to Jones [et al.], because of the failure of the Jefferson Lake Oil Company to drill wells as provided. The court's rulings were to the effect that the penalty of the bonds constituted liquidated damages and it was not necessary for Jones [et al.], to prove probability of damages and the Fidelity and Deposit could not show the improbability of damages to Jones" et al.

The Fidelity & Deposit, during the progress of the trial, received the impression that Jones et al. agreed with the Jefferson Lake Oil Company "to extend the time to commence drilling the well six months after the date upon which the commencement of the drilling was guaranteed in the bond of June 28th, 1929." Its counsel "moved for a continuance on the ground of surprise, in that the testimony showed a variance by showing the extension agreement beyond the date of the breach as

set out in the petition." Its motion was overruled. Also, before the commencement of the trial, the Fidelity & Deposit tendered an amended answer and counterclaim which the court refused to allow to be filed.

At the conclusion of the evidence of both parties, the court peremptorily directed a verdict for Jones, Bayless, and Leblanc.

The Fidelity & Deposit is here presenting in its brief the questions stated above, for review and grounds of reversal. Since it has confined its right to reversal to the three grounds, none other will be considered. All other questions which might be presented are now and shall hereinafter be regarded as waived by it.

Taking up these questions in reverse order, we shall first dispose of the question of the right of the Fidelity & Deposit to have considered the ruling of the court refusing to allow the amendment to its answer to be filed. The record discloses that on entering its motion to file the amendment, the plaintiffs objected to the motion. Thereupon the court overruled its motion to which the Fidelity & Deposit reserved an exception; and the parties, by their counsel, and the court, proceeded to impanel the jury to try the case and no other or further order appears in the record concerning this amendment.

The Fidelity & Deposit Company did not request, and the court did not by an order direct, or permit, the amendment to be made a part of the record for any purpose.

The applicable rule where an amended pleading is not permitted to be filed, as in this instance, is aptly stated in Newman's Pleading and Practice (Revised Edition of 1907, sec. 675), as follows:

"An order merely rejecting an amended pleading does not, either at law or in equity, make it a part of the record, and though the clerk copy such a pleading in the transcript, but without any order recognizing it as the paper offered, it can not be considered on appeal. Nor can it be considered if the order make it a part of the record, unless it be identified by the order or by the certificate of the clerk as the paper tendered and rejected. Unless, therefore, a rejected pleading be made part of the record by order, and identified, it should be em-

bodied in a bill of exceptions. The text is supported by Hortsman v. C. & L. R. R. Co., 18 B. Mon. 223; Young v. Bennett, 7 Bush, 476; Bramel v. Bramel, 62 S. W. 529, 23 Ky. Law Rep. 11; Lewis' Adm'r v. Bowling Green Ry. Co., 147 Ky. 461 [144 S. W. 377, 39 L. R. A. (N. S.) 929]; Commonwealth v. P., C., C. & St. L. R. Co., 163 Ky. 546 [174 S. W. 29]; and many other similar cases." Grigsby v. Smith, 174 Ky 819, 192 S. W. 856.

The tendered amendment not being made a part of the record, either by an order of court, or the bill of exceptions, the Fidelity & Deposit is not now entitled to have it regarded as a part of the record, or urge the ruling of the court thereon as a ground of reversal. We are not disposed to disregard this familiar rule of practice and assume the duty of considering the tendered amendment, and the ruling of the court appertaining to it.

During the examination, as a witness, of one of the plaintiffs, counsel of the Fidelity & Deposit "moved the court for a continuance on the ground of surprise, in that the testimony shows a variance by showing the extension agreement beyond the date of the breach as set out in the petition."

The application in every case for a continuance is addressed to the sound discretion of the court (Crane v. Hall, 165 Ky. 827, 178 S. W. 1096), and unless this discretion has been abused, the action of the court will not be disturbed by this court. The trial court is never bound to accept either the mere statement of counsel requesting the continuance or that of an affidavit supporting the application.

The actions were filed in March, 1931. Between that date and the date of trial, March 10, 1932, the Fidelity & Deposit had filed an amendment to its answer and counterclaim on June 13, 1931, October 24, 1931, and March 8, 1932.

Even if the mere statement of the counsel were sufficient on which to base the motion, there was no showing that it had been diligent in discovering the facts which it asserts were a variance from the petition. The motion to continue was properly overruled.

With these questions of practice disposed of, we are brought to a consideration of the vital issue debated in the briefs.

The courts, without an exception, agree that it is competent for parties entering upon an agreement to avoid all future questions as to the amount of damages which may result from the violation of the contract, and to agree on a definite sum as that which shall be paid to the party who alleges and establishes the violation of the agreement. And where this course has been adopted and the specific sum named in the contract, the difficulty which arises in an action to recover a specific sum is whether it should be considered as liquidated damages, or only as a penalty. Also, if no damages have been sustained by reason of the violation of the agreement, a clause liquidating the damages will not avail the plaintiff. In such case only nominal damages are recoverable.

"Just compensation for the injury sustained is the principle at which the law aims, and the parties will not be permitted, by express stipulation, to set this principle aside." Myer v. Hart, 40 Mich. 517, 523, 29 Am. Rep. 553.

> In Hahn v. Horstman et al., 12 Bush, 249, we said:
> "Parties to a contract may agree upon any amount of compensation for its breach as liquidated damages which does not manifestly exceed the amount of injury suffered, and the party in default will be required to pay this fixed sum as an equivalent for the loss sustained. Pierce v. Fuller, 8 Mass. 223 [5 Am. Dec. 102]; Bagley v. Peddie, 16 N. Y. 469 [69 Am. Dec. 713]; Mott v. Mott, 11 Barb. [N. Y.] 127."

Continuing we said:

> "If the actual damage sustained by the party complaining can not be reached or determined by any known rule of law, then the courts are disposed to look alone to the measure of damages fixed by the contract; but as a general rule where the actual damage can be ascertained from the nature of the contract itself, the courts are always inclined to disregard the language of the contract so far as it fixes the damages, and particularly in cases where a strict construction of the language used would

result in oppression to the party against whom the claim is asserted, by giving to the complaining party more damages than he has really sustained. Sedgwick on Damages, 420."

Whether a stipulated sum is to be allowed as liquidated damages is a question of law.

The only inquiry is whether or not the parties intended the sum to be accepted as compensation. This is a question involving the interpretation of the contract, and, of course, no evidence on the question can be received dehors the instrument. Sedgwick on Damages (9th Ed.) vol. 1, sec. 408, p. 783.

The prevailing doctrine is:

"Where, independent of the stipulation, the damages would be wholly uncertain, and incapable or very difficult of being ascertained, except by mere conjecture, there the damages will be usually considered liquidated." "The uncertainty contemplated by the rule is an uncertainty as to the extent and amount, and not as to the proper measure of damages."

Sedgwick on Damages (9th Ed.) vol. 1, sec. 416, p. 796.

We have approved and applied these principles in Louisville Gas & Electric Co. v. City of Louisville, 191 Ky. 816, 231 S. W. 909; Rowland v. Burley Tob. Growers' Ass'n, 208 Ky. 300, 270 S. W. 784; Krausgill Piano Co. v. Federal Electric Co., 216 Ky. 470, 287 S. W. 962; Cook v. Johnson, 241 Ky. 452, 44 S. W. (2d) 547.

The parties to the pending action agree on them, but disagree on their application to the developed facts.

The principles applicable and controlling in such cases are plain and simple. It is their application to the particular contract and its subject-matter that is exceedingly controversial. In every case where a fixed sum is stipulated as damages, the court will look to see whether the stipulated compensation is a reasonable one, and, if not, they will require damages to be assessed as if no stipulated sum were named in the contract.

In Bell v. Truit, 9 Bush, 257, there was presented a lease affording the leasee the privilege of using the leasor's land to bore and excavate for oil; to move the same, paying one-eighth part thereof to the lessor as

royalty; the leasee to commence operations within twelve months from the date of the lease or thereafter pay the leasor $25 per annum until work was commenced. In an action to recover the $25 per annum, the leasee pleaded that notwithstanding the form of the stipulation, the contingent obligation to pay the $25 per annum was not intended as a covenant for liquidated damages, but as a penalty merely, enforceable according to the damage which might be sustained by the breach of the covenant to commence operations; and the fact being satisfactorily established, by many unsuccessful attempts to obtain oil in the same locality, their operations under the contract would have resulted only in loss and inconvenience to both parties, the leasor was therefore entitled to no recovery. He also sought by an appropriate allegation to be relieved from the contract entirely, on the ground it was executed as the consequence of a mutual mistake of himself and the leasor as to the existence of oil on the land.

Following a statement in Shute v. Taylor, 5 Metc. (Mass.) 61, of the prevailing rule appertaining to liquidated damages and penalty, our conclusion was stated thus:

"This doctrine being, as we conceive, applicable to this case, and it not appearing from the evidence that the appellee would in any reasonable probability have been benefited by a compliance with the undertaking to commence operations by boring or mining for oil on his land, he should in no event have recovered more than nominal damages for the breach of appellant's covenant."

The Fidelity & Deposit with confidence presents Bell v. Truit as a controlling precedent in the pending case.

The rule enunciated in Bell v. Truit, that a leasor, in a lease to explore for gas and oil by drilling a well, cannot recover damages for the leasee's failure to drill a well without showing there was oil and gas in the territory to be developed, has been approved and followed in Duff v. Bailey, 96 S. W. 577, 29 Ky. Law Rep. 919; Clark v. Cooper, 197 Ky. 530, 247 S. W. 929; Ward et al. v. Daugherty, 228 Ky. 326, 14 S. W. (2d) 1089; and Carroll Gas & Oil Co. v. Skaggs, 231 Ky. 284, 21 S. W. (2d) 445. In Ward v. Daugherty, the leasor alleging that a test well which had been drilled on the leased

premises had proved dry and that the leasee withdrew the casing therefrom, without drilling a second test well, and had abandoned the lease, sought damages for breach of contract. His petition was dismissed on a demurrer, and on an appeal to this court, we held that because the petition failed to allege there was oil and gas in the land in such quantities as to make the royalty of value, there was a failure to state a cause of action, and that the demurrer was properly sustained.

The principles stated in Bell v. Truit, as well as our later opinions approving and following it, without referring to it, must be considered in relation to the particular contract involved in each case.

The character of the leases and bonds involved in the pending case must be construed according to the intention of the parties as therein expressed, and whether the bonds are to be construed as calling for liquidated damages or a penalty is to be determined according to the circumstances existing at the time of their execution, and the fact that, at the time of their breach, conditions have so changed that it will then be impracticable and difficult to show actual damages, does not effect the character of the contract. It is unnecessary in every case of this kind to show that substantial damages resulted from the breach. Starr v. Lee et al., 88 Cal. App. 344, 263 P. 376.

In United States v. Bethlehem Steel Co., 205 U. S. 105, 27 S. Ct. 450, 455, 51 L. Ed. 731, the court, through Justice Peckham, said:

"The courts at one time seemed to be quite strong in their views and would scarcely admit that there was a valid contract providing for liquidated damages. Their tendency was to construe the language as a penalty, so that nothing but the actual damages sustained by the party aggrieved could be recovered. Subsequently the courts became more tolerant of such provisions, and have now become strongly inclined to allow parties to make their own contracts, and to carry out their intentions, even when it would result in the recovery of an amount stated as liquidated damages, upon proof of the violation of the contract, and without proof of the damages actually sustained. * * * The question always is, What did the parties intend by the

language used? When such intention is ascertained it is ordinarily the duty of the court to carry it out."

In the more recent case of Wise, Trustee, v. United States, 249 U. S. 361, 39 S. Ct. 303, 304, 63 L. Ed. 647, the court, in substance, said: When the intention of the parties could be arrived at from the writing, effect must be given to a provision for payment of their recovery as freely as to any other provision where the damages are uncertain in nature or amount, or are difficult to ascertain, or where the amount stipulated is not so extravagant or disproportionate to the amount of property loss as to show that compensation was not the object aimed at, or such as to imply mistake, circumvention, or oppression. Adverting to the court's language:

"The later rule, however, is to look with candor, if not with favor, upon such provisions in contracts when deliberately entered into between parties who have equality of opportunity for understanding and insisting upon their rights, as promoting prompt performance of contracts and because adjusting in advance, and amicably, matters the settlement of which through courts would often involve difficulty, uncertainty, delay and expense."

See Jewett, Bigelow & Brooks v. Detroit Edison Co. (C. C. A.) 274 F. 30, and Rispin v. Midnight Oil Co. (C. C. A.) 291 F. 481, 34 A. L. R. 1331.

In Springer v. Citizens' Natural Gas Co., 145 Pa. 430, 22 A. 986, 989, it is written:

"It is impossible to learn from the affidavit of defense when the discovery therin alleged was made. Therefore this branch of the defense may be dismissed as too vague for consideration. I do not think, however, that the fact of there being no oil or gas in the land, no matter how soon found out, could avail the defendant. The lessors were entitled to insist that this fact should be made manifest in the very manner agreed upon, or to demand the sums stipulated to be paid for delay. The covenant on this subject is absolute and unqualified, and provides for the doing of nothing that is illegal or impossible. If a clear, positive covenant, like the one before us, to do a lawful thing or pay a certain

sum of money for not doing it, can be evaded by showing that the performance of the act would not benefit the covenantee, it is hard to tell where we could properly stop in applying the rule. We might presently reach a point where an action for liquidated damages for breach of an agreement not to engage in a certain business within designated limits might be defeated by proving that every one conducting the same business in the neighborhood had been losing money, and, for reasons shown, would probably continue to do so.''

In the present case, one of the leases contains over 1,200, and the other more than 400, acres, and the tracts are adjoining.

The manifest purpose of the leases was to test the leased premises for oil and gas and salt, by putting down, thereon, within the time agreed upon by the parties, the number of wells designated in the leases which are, by the terms of the bonds, incorporated therein. The questions presented appear to be ruled by Wills v. Gas Co., 130 Pa. 222, 18 A. 721, 5 L. R. A. 603; Ray v. Gas Co., 138 Pa. 576, 20 A. 1065, 12 L. R. A. 290, 21 Am. St. Rep. 922; Springer v. Citizens' Natural Gas Co., 145 Pa. 430, 22 A. 986; Leatherman v. Oliver, 151 Pa. 646, 25 A. 309; Gibson v. Oliver, 158 Pa. 277, 27 A. 961; Allen v. Narver et al., 178 Cal. 202, 172 P. 980; McComber v. Kellerman, 162 Cal. 749, 124 P. 431; Rispin v. Midnight. Oil Co. (C. C. A.) 291 F. 481, 34 A. L. R. 1331; Steel v. Peoples' Oil & Gas Co., 147 Ill. App. 133; Cowan, Inc. v. Meyer, 125 Md. 450, 94 A. 18; Ellis et al. v. Simmons. et al. (C. C. A.) 11 F. (2d) 596; Escondido Oil Co. v. Glaser, 144 Cal. 500, 77 P. 1040; Blodget v. Columbia Live Stock Co. (C. C. A.) 164 F. 305; Sun Printing & Publishing Ass'n v. Moore, 183 U. S. 642, 22 S. Ct. 240, 46 L. Ed. 366; United States v. Bethlehem Steel Co., 205 U. S. 105, 27 S. Ct. 450, 51 L. Ed. 731.

The entire agreement between the parties evidenced by the leases and the bonds must be considered in connection with the subject-matter involved, the purpose for which they were made, and that the intention of the parties was to make an estimate of what would be a fair compensation of loss sustained by the leasor in the event of the failure of the Jefferson Lake Oil Company to live up to the terms of the leases. Obviously, it was within the knowledge of the parties to the bonds that in

case of a breach of the leases, it would be extremely difficult, if not impossible, to fix damages arising from a breach thereof.

By the expressed terms of the bonds, the Jefferson Lake Oil Company and the Fidelity & Deposit bound themselves in the alternative; that is, that the Jefferson Lake Oil Company "shall well and truly" perform its part of the obligations set forth in the leases, or they would pay Jones, Bayless, and Leblanc $2,500, the amount of each bond.

The purpose of the leases was to drill the leased premises for oil, gas, and salt purposes, by putting down the number of wells thereon stated in the leases and within the time stated in the bonds. If it was intended by the parties that a test of the leased premises might be made by putting down wells outside thereof, the principal in the bonds and its surety should have protected themselves at the time of the execution of the bonds by a provision to that effect. They may not now rely on an implied covenant to that effect to escape their liability on the bonds. The bonds and the leases evidence the contract between the parties, and neither leasee nor its surety is entitled to declare the bonds unenforceable on the ground of the lessee's nonperformance, nor defeat a recovery thereon by alleging and proving that it can be shown by the drilled wells in the vicinity of leased premises, there was at the time of either the making or the breach of the bonds, neither gas, oil, nor salt in paying quantities on the leased premises.

In reaching this conclusion, we do not desire to be understood that we are departing from, or overlooking, our pronouncements in Bell v. Truit, Duff v. Bailey, Clark v. Cooper, Ward v. Daugherty, and Carroll Gas & Oil Co. v. Skaggs, supra, which are neither inconsistent, nor in conflict, with the principles herein reiterated and applied to the contracts of the parties, now under review, but merely extending and explaining them.

Wherefore, the judgment is affirmed.

The whole court sitting.