GUSTAV HIRSCH ORGANIZATION,
INC., Plaintiff,

v.

EAST KENTUCKY RURAL ELECTRIC
COOPERATIVE CORPORATION,
Defendant.

United States District Court
E. D. Kentucky,
Lexington.
Feb. 12, 1962.

William Patrick Clyne, Cleveland, Ohio, Stoll, Keenon & Park, Robert M. Odear, Lexington, Ky., for plaintiff.

Philip P. Ardery, Louisville, Ky., Denney & Landrum, Edwin R. Denney, Lexington, Ky., for defendant.

HIRAM CHURCH FORD, Chief Judge.

On October 28, 1954, the plaintiff Gustav Hirsch Organization, Inc., an Ohio corporation experienced in construction of lines for the transportation of high voltage electric current, entered into a contract with the defendant, a rural electric cooperative corporation organized and existing under the laws of the State of Kentucky, engaged in the generation and transmission of electric power, by the terms of which the plaintiff, in consideration of $244,472.24, agreed to furnish all materials, machinery, tools, equipment, labor, transportation and other means necessary therefor and construct for defendant, in accordance with the terms and provisions of the contract, 19.8 miles of high voltage transmission lines.

By this action, plaintiff seeks to recover $35,678.91, alleged balance claimed due under the contract.

So far as here pertinent, the contract, which was approved by the Administrator of the Rural Electrification Administration on December 2, 1954, provides as follows: That the plaintiff would "com-

mence construction of the Project within thirty (30) calendar days after written notice by the Administrator of the approval of the Construction Contract and further agrees to prosecute diligently and to complete construction in strict accordance with the Plans, Specifications and Construction Drawings within Forty (40) calendar days '(excluding Saturdays, Sundays and legal holidays)' after the expiration of such 30 days period;" * * * That "The time of the Completion of the construction of the Project is of the essence of this Contract. Should the Contractor neglect, refuse or fail to complete the construction within the time herein agreed upon, after giving effect to extensions of time, if any, herein provided, then, in that event and in view of the difficulty of estimating with exactness damages caused by such delay, the Owner shall have the right to deduct from and retain out of such moneys which may be then due, or which may become due and payable to the Contractor the sum of One Hundred Dollars ($100.00) per day for each and every day that such construction is delayed in its Completion beyond the specified time, as liquidated damages and not as a penalty; and that "The time for completion * * * shall be extended for the period of any reasonable delay which is due exclusively to causes beyond the control and without the fault of the Contractor, including acts of God, fires, floods, and acts or omissions of the Owner with respect to matters for which the Owner is solely responsible: Provided, however, that no such extension of time for completion shall be granted the Contractor unless within ten (10) days after the happening of any event relied upon by the Contractor for such an extension of time the Contractor shall have made a request therefor in writing to the Owner."

It appears from the face of the contract that the obligation of the plaintiff to pay liquidated damages was not entered into blindly for it is expressly stated therein that the plaintiff had made a careful examination of the project to be constructed and was informed as to the nature of the proposed construction and all conditions which would affect the work; and that the reason for the provisions as to liquidation of damages was "in view of the difficulty of estimating with exactness damages caused by such delay."

It appears from the evidence that in December 1954 and before the expiration of thirty days after approval of the contract by the administrator of the Rural Electrification Administration, the plaintiff began the performance of the contract. However, without counting against the contractor any of the time consumed prior to January 3, 1955, upon application made by the plaintiff's engineer, the contractor was granted extensions of time for completion, excluding Saturdays, Sundays and holidays, for 29 days, which were mostly on account of inclement weather during the months of January, February and March. The result was that the allowable period of 40 days for completion of the project expired on April 7, 1955.

The plaintiff introduced proof tending to show that, in addition to the 29 days granted, there were certain times during the progress of the work when delay occurred which was due to causes beyond the control and without fault of the contractor, but the proof as to such incidents of delay is so vague and indefinite that the extent of such delay, if any, can not be determined and there is nothing to show that at any time it was substantial. Moreover, the contract provides that no such extension of time as claimed shall be granted the contractor unless within ten (10) days after the happening of any such event the contractor shall have made a request therefor in writing to the owner. Proof is entirely lacking that such request was ever at any time presented by the plaintiff in respect to any of the incidents referred to.

The contract was completed as of September 26, 1955, as shown by a letter addressed to the engineers for the defendant from C. J. Bowers, Superintendent for the plaintiff, stating "This is to inform you and all persons concerned that the 138 KV Transmission line has

been completed according to the plans and specifications as of this date of September 26, 1955." (Defendant's Exhibit No. 5).

It thus appears that the delay of the plaintiff in completing the construction of the project, counting each and every day between April 7 and September 26, 1955, amounts to 172 days.

Computing liquidated damages in accordance with the terms of the contract at $100 per day, the defendant retained the sum of $17,200 and herein asserts by counterclaim the right so to do.

The contract here involved called for the construction of two branches of transmission line, one of which extended from defendant's Dale Sub-station at Ford, Kentucky, for a distance of approximately 8.3 miles to a point in Madison County near Richmond, Ky., and the other branch from the same Sub-station at Ford, Ky., for a distance of approximately 11.5 miles to a point at U. S. Highway 60 in Fayette County, Ky., opposite Avon.

At the terminal of each branch it was expected to make connection with a similar power line to be constructed by Kentucky Utilities Company, which is perhaps the largest producer of electric power in Kentucky. Accordingly to the testimony of A. D. Langford, Transmission Engineer for Kentucky Utilities Company, the purpose of these lines was, in substance, to create an inner connection between the system of Kentucky Utilities and the system of the defendant, so that each could procure quick relief in case they lost one of their generating units or suffered other emergency, and each would have an outlet for surplus power. As he said "It was to the mutual benefit of the companies". That to have such emergency facilities available to the defendant company was of great value to it is impressively attested by the fact that defendant was investing approximately one-fourth of a million dollars in the construction of these power lines.

It is undisputed that at the time of the completion of the work on defendant's lines the necessary facilities for connecting with the lines of Kentucky Utilities Company in Fayette County had not been erected by Kentucky Utilities Company. It appears that the line in Madison County was energized on September 12, 1955. The plaintiff contends that the defendant suffered no damage on account of the delay and that consequently the provision of the construction contract for liquidated damages was not binding or enforceable. It is not disputed that during the long delay of 172 days the defendant incurred not only unnecessary expenses for engineering services in the sum of $3,750, but other damage which, by reason of the nature of the undertaking, could not be estimated with accuracy. Defendant rests its claim for liquidated damages upon the contract, together with its proof of the fact that substantial damages were sustained, the total extent of which it was difficult, if not impossible, to ascertain.

The law governing enforcement of contracts for liquidated damages was carefully considered by the Court of Appeals of Kentucky in Fidelity & Deposit Company of Maryland v. Jones, 256 Ky. 181, 75 S.W.2d 1057. In that case, it seems to be made sufficiently clear that the written contract providing for liquidated damages must be construed according to the intention of the parties as therein expressed, and whether it is to be construed as calling for liquidated damages or a penalty, is to be determined according to the circumstances existing at the time of its execution and the fact that at the time of its breach conditions have so changed that it will then be impracticable and difficult to show actual damages does not effect the character of the contract. "It is unnecessary in every case of this kind to show that substantial damages resulted from the breach."

Considering this entire agreement, the obvious intention of the parties in providing for liquidated damages and the nature of the enterprise, it seems quite obvious that at the time of executing the contract, as well as at its completion, it was not only difficult but practically im-

possible to ascertain the damages arising from its breach.

While the authorities recognize that at one time courts looked with disfavor upon contracts providing for liquidated damages, that time has long passed, and the courts now are "strongly inclined to allow parties to make their own contracts, and to carry out their intentions, even when it would result in the recovery of an amount stated as liquidated damages, upon proof of the violation of the contract, and without proof of the damages actually sustained." United States v. Bethlehem Steel Co., 205 U.S. 105, 27 S.Ct. 450, 51 L.Ed. 731.

■ The weight of authority on the subject seems to be that where at the time of the execution of the contract the probable damages are uncertain and difficult to ascertain and the amount stipulated is not so extravagant or disproportionate as to show fraud, mistake, circumvention or oppression, there is no sound reason why persons competent and free to contract may not agree upon this subject as fully as upon any other, or why their agreement, when fairly and understandingly entered into, with a view to just compensation for the anticipated loss, should not be enforced. Wise v. United States, 249 U.S. 361, 365, 39 S.Ct. 303, 63 L.Ed. 647; Priebe & Sons v. United States, 332 U.S. 407, 411–412, 68 S.Ct. 123, 92 L.Ed. 32.

The law of Kentucky seems to be in accord. Fidelity & Deposit Company of Maryland v. Jones, supra. In Maryland Casualty Co. v. Ballard County, 217 Ky. 343, 354, 289 S.W. 316, 320, it is said: "Courts are favorably inclined towards the adjustment of damages by the parties, and, when they enter into a solemn written obligation, by which they agree that the failure of a party to the contract to perform his undertaking shall be adjusted by the payment of certain stipulated damages which are not unreasonable, the courts will enforce the same."

The record in this case adequately establishes that the parties were competent and free to contract; that the damages which would have resulted from delay in the completion of the contract were not only difficult, but practically impossible to reasonably estimate or ascertain at the time of the making of the agreement. Considering the fact that the amount involved assured experience and large capacity in the contractor, we find nothing in the record to indicate or to imply fraud, mistake, circumvention or oppression.

■ For the reasons indicated, I am of the opinion that the provisions for liquidated damages, as set out in the contract, are binding upon the parties and should be enforced.

The defendant is entitled to retain the amount of $17,200 as stipulated damages.

After charging to the plaintiff the further sum of $2,715.85, which, without dispute, was owing to defendant by plaintiff, it appears from the evidence that the sum of $15,763.06 remained due to the plaintiff at the time of the completion of the contract on September 26, 1955. This amount was not paid until July 18, 1960. I am of the opinion that plaintiff is entitled to judgment for interest on $15,763.06 from September 26, 1955, to July 18, 1960.

■ We have given no consideration to the plaintiff's claim that it was entitled to a rescission of the contract and to recover on the basis of quantum meruit for the reason that in the brief filed by plaintiff's counsel upon the submission of this case this claim is not mentioned or referred to and we naturally assume that it is abandoned. In any event, it finds no support in the record.

Let judgment be entered in conformity herewith. Each party will pay its own cost.